ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| TAMARA I. RIVERA MARTÍNEZ<br>RECURRENTE<br><br>v.<br><br>JUNTA DE RETIRO DEL GOBIERNO DE PUERTO RICO<br>RECURRIDA | KLRA202400081 | Revisión Judicial procedente de la Junta de Retiro del Gobierno de Puerto Rico<br><br>Caso núm. 2022-0057<br><br>Sobre:<br>COBRO PAGO INDEBIDO DE PENSIÓN |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortíz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de abril de 2024.

Comparece la parte recurrente, Tamara I. Rivera Martínez (en adelante, ˝Sra. Rivera Martínez˝ o ˝recurrente˝) mediante *Recurso de Revisión Judicial* y solicita que revisemos la *Resolución* dictada el 18 de enero de 2024 y notificada el 23 de enero de 2024 por la Junta de Retiro del Gobierno de Puerto Rico (en adelante, ˝Junta de Retiro˝). Mediante el referido dictamen, la Junta de Retiro ordenó el archivo con perjuicio de una apelación incoada por la recurrente sobre cobro indebido de pensión.

Por los fundamentos que expondremos a continuación, se *Confirma* la *Resolución* recurrida.

**I.**

La Sra. Rivera Martínez se desempeñó como Maestra de Biología en el Departamento de Educación hasta su jubilación en el 2013. Cotizó un total de 36 años, 4 meses, 2 semanas y .94 días en el Sistema de Retiro. El 23 de enero de 2013, la Sra. Rivera Martínez presentó una Solicitud de Retiro por Años de Servicio y Edad la cual fue aprobada y

efectiva desde el 27 de julio de 2013, con una renta mensual de $2,047.50.

El 31 de mayo de 2023, la División de Cobros de la Junta de Retiro le notificó a la recurrente una *Factura al Cobro* por la cantidad de $111,798.95, con la intención de recuperar el pago indebido de pensión efectuado a la Sra. Rivera Martínez, por razón de haber trabajado como Auxiliar en Relaciones Públicas en el Municipio Autónomo de Villalba (en adelante, ¨Municipio¨) desde el 16 de enero de 2017 hasta el 14 de julio de 2021.

Insatisfecha con la factura recibida, el 29 de junio de 2023, la Sra. Rivera presentó una Apelación ante la Junta de Retiro. Luego de varios trámites procesales, el 17 de agosto de 2023, se celebró una primera Conferencia con Antelación a Vista a la cual compareció la Junta de Retiro. La Sra. Rivera Martínez no compareció. El 17 de agosto de 2023, el foro administrativo emitió una *Orden* a la parte recurrente para que demostrara justa causa que excusara su incomparecencia. Ese mismo día, la Sra. Rivera Martínez presentó una *Moción Presentando Excusas por Incomparecencia*, dando por cumplida la Orden de mostrar justa causa.

El 18 de agosto de 2023, pautó para el 28 de septiembre de 2023 la celebración de una Conferencia con Antelación a Vista y para el 27 de octubre de 2023 la celebración de la Vista Administrativa.

El 28 de septiembre de 2023, se celebró la segunda Conferencia con Antelación a Vista a la cual compareció la Junta de Retiro. La Sra. Rivera Martínez no compareció. A tales efectos, ese mismo día, la Oficial Examinadora emitió una *Orden* de mostrar justa causa dirigida a la recurrente ante su incomparecencia.

Ante el incumplimiento de la Sra. Rivera Martínez con la Orden del 28 de septiembre de 2023, el 12 de octubre de 2023, el foro recurrido dictaminó otra *Orden* otorgándole un término a la recurrente para que demostrara justa causa por el incumplimiento.

El 27 de octubre de 2023, se celebró la Vista Administrativa contando con la comparecencia de la Junta de Retiro. La Sra. Rivera Martínez tampoco compareció a la Vista Administrativa. Durante esa misma fecha, tras el reiterado incumplimiento con la órdenes y citaciones emitidas, la Oficial Examinadora emitió *Orden* en la cual se informó que el caso quedó sometido por falta de interés.

Posteriormente, el 1 de noviembre de 2023, la recurrente presentó una *Moción de Reconsideración* y sostuvo que por inadvertencia no había cumplido con las citaciones emitidas. Además, notificó que se encontraba en conversaciones avanzadas para lograr un acuerdo transaccional. Por tanto, solicitó reconsideración y que se le otorgara un término para informar el estado de las conversaciones transaccionales.

El 2 de noviembre de 2023, se emitió *Orden* mediante la cual la Junta de Retiro declaró Ha Lugar la reconsideración y otorgó un término de diez (10) días para que informaran al foro sobre el acuerdo transaccional llegado entre las partes. Transcurrido el término, el 14 de noviembre de 2023, se emitió *Orden* en la que se informó que el caso quedó sometido por falta de interés.

El 21 de noviembre de 2023, la Sra. Rivera Martínez presentó una *Moción Informativa* en la cual adujo que el acuerdo transaccional con el Municipio había sido finiquitado el 3 de noviembre de 2023.

Luego, el 16 de enero de 2024, la recurrente presentó otra *Moción Informativa* y sostuvo que no habían recibido respuesta por parte del foro respecto a la moción notificando el acuerdo transaccional.

El 18 de enero de 2024, la Oficial Examinadora emitió una *Resolución*, notificada el 23 de enero de 2024. Mediante el referido dictamen, se archivó con perjuicio el recurso de Apelación presentado por la Sra. Rivera Martínez debido al reiterado incumplimiento con las órdenes y citaciones emitidas por el foro adjudicativo.

Inconforme, el 16 de febrero de 2024, la Sra. Rivera Martínez presentó un *Recurso de Revisión Judicial* en el cual solicitó la revisión de

la Resolución emitida. La recurrente realizó el siguiente señalamiento de error:

> **Erró el Honorable Foro Administrativo al desestimar el caso con perjuicio sin tomar en consideración la moción informativa donde se acredita la existencia de un acuerdo extrajudicial que disponía del caso.**

El 18 de marzo de 2024, la Junta de Retiro presentó su alegato en oposición.

Examinado el expediente que obra ante nosotros y con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

### -A-

La Sección 4.1 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9671, dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Andrea Hernández Feliciano v. Municipio de Quebradillas,* 2023 TSPR 6, resuelto el 20 de enero de 2023. Es norma reiterada que, al revisar las determinaciones de los organismos administrativos, los tribunales apelativos le conceden gran consideración y deferencia, por la experiencia y el conocimiento especializado que estos poseen. *Íd.*

Por su parte, la Sección 4.5 de la LPAU, 3 LPRA sec. 9675, establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que, los tribunales no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente contrarias a derecho. *Super Asphalt v. AFI y otro,* 206 DPR 803 (2021); *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117 (2019).

Por otro lado, la citada Sección 4.5 de la LPAU, *supra,* dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Superintendente*, 201 DPR 26 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Íd.* Lo anterior responde a la vasta experiencia y al conocimiento especializado que tienen las agencias sobre los asuntos que le son encomendados. *Capó Cruz v. Junta de Planificación,* 204 DPR 581 (2020).

Por consiguiente, dada la presunción de corrección y regularidad que reviste a las determinaciones de hecho elaboradas por las agencias administrativas, éstas deben ser respetadas mientras la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Graciani Rodríguez v. Garaje Isla Verde*, supra. Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación, aunque esta no tiene que ser la única o la más razonable. *Andrea Hernández Feliciano v. Municipio de Quebradillas,* supra.

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Íd.*

Acorde con lo antes expuesto, la revisión judicial de los dictámenes administrativos está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Íd.* Por tanto, si una parte afectada por un dictamen administrativo impugna las determinaciones

de hecho, esta tiene la obligación de derrotar, con suficiente evidencia, que la decisión del ente administrativo no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Capó Cruz v. Junta de Planificación, supra; Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004). De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad. *O.E.G. v. Rodríguez,* 159 DPR 98, 118 (2003).

**-B-**

En nuestro ordenamiento, "la función del tribunal sentenciador es atender los casos y asuntos inmediatamente ante su consideración". *Vives Vázquez v. E.L.A.,* 142 DPR 117, 141 (1996). En ese sentido y de ordinario, los tribunales están obligados a intervenir oportuna y efectivamente para desalentar la falta de diligencia y el incumplimiento de sus órdenes. *Mejías et. al. v. Carrasquillo et al.,* 185 DPR 288, 298 (2012); *Dávila v. Hosp. San Miguel, Inc.,* 117 DPR 807, 819 (1986).

Por ello, es necesario establecer un balance entre el deber de las partes de cumplir con las leyes y los reglamentos procesales, y el derecho estatutario de los ciudadanos de que su caso sea revisado. Para lograr tal balance, se ha establecido, como norma general, que el mecanismo procesal de la desestimación, como sanción, se debe utilizar como último recurso. *Román et als. V. Román et als.,* 158 DPR 163 (2002).

Ahora bien, en nuestra jurisdicción impera la política judicial de que los casos se ventilen en sus méritos, a fin de cumplir con el interés de que todo litigante tenga su día en corte. *Mejías et al. v. Carrasquillo et al., supra; Mun. de Arecibo v. Almac. Yakima,* 154 DPR 217 (2001); *Amaro González v. First Fed. Savs.,* 132 DPR 1042 (1993). Así pues, aunque las partes tienen el deber de ser diligentes y proactivos en el manejo procesal de sus casos, la desestimación de las causas de acciones es una medida extrema y drástica a la cual los tribunales no deben acudir

desmesuradamente. *Sánchez Rodríguez v. Adm. de Corrección,* 177 DPR 714 (2009); *Banco Popular v. S.L.G. Negrón,* 164 DPR 855, 864 (2005).

Es por ello, que nuestro máximo foro ha establecido como norma general, que la desestimación de una demanda es la sanción más drástica que se puede imponer, por lo que los tribunales deben establecer un balance entre el interés de tramitar los casos rápidamente y que éstos sean resueltos en sus méritos. *Banco Popular v. S.L.G. Negrón, supra.* Por tal razón, la desestimación de un caso como sanción debe prevalecer únicamente en situaciones extremas en las cuales haya quedado demostrado, clara e inequívocamente, la desatención y el abandono total de la parte con interés, y luego que otras sanciones hayan probado ser ineficaces en la administración de la justicia. En todo caso, no se debe decretar la desestimación sin un previo apercibimiento. *Pueblo v. Rivera Toro,* 173 DPR 137, 145-146 (2008); *Mun. de Arecibo v. Almac. Yakima,* 154 DPR 217, 221-223 (2001); *Dávila v. Hosp. San Miguel, Inc.,* 117 DPR 807, 814 (1986); *Maldonado v. Srio. de Rec. Naturales,* 113 DPR 494, 498 (1982).

Cónsono con lo anterior, la Sección 3.21 de la LPAU, 3 LPRA sec. 9661, establece:

La agencia podrá imponer sanciones, en su función cuasijudicial, en los siguientes casos:

(a) Si el promovente de una acción, o el promovido por ella, dejare de cumplir con las reglas y reglamentos o con cualquier orden del jefe de la agencia, del juez administrativo o del oficial examinador, la agencia a iniciativa propia o a instancia de parte podrá ordenarle que muestre causa por la cual no deba imponérsele una sanción. La orden informará de las reglas, reglamentos u órdenes con las cuales no se haya cumplido, y se concederá un término de veinte (20) días, contados a partir de la fecha de notificación de la orden, para la mostración de causa. De no cumplirse con esa orden, o de determinarse que no hubo causa que justificare el incumplimiento, entonces se podrá imponer una sanción económica a favor de la agencia o de cualquier parte, que no excederá de doscientos (200) dólares por cada imposición separada, a la parte o a su abogado, si este último es el responsable del incumplimiento.

**(b) Ordenar la desestimación de la acción en el caso del promovente, o eliminar las alegaciones en el caso del promovido, si después de haber impuesto sanciones económicas y de haberlas notificado a la**

**parte correspondiente, dicha parte continúa en su incumplimiento de las órdenes de la agencia.**

(c) Imponer costas y honorarios de abogados, en los mismos casos que dispone la Regla 44 de Procedimiento Civil, según enmendada. (Énfasis suplido).

Asimismo, el Reglamento Núm. 7053, conocido como Reglamento de Procedimiento Adjudicativo del Sistema de Retiro para Maestros, del 15 de noviembre de 2005, regula el procedimiento de apelación aplicable a las determinaciones del Sistema de Retiro para Maestros ante la Junta de Retiro. El Artículo 6, Sección 5 del referido Artículo dispone:

Se podrá desestimar una apelación cuando:

(a) El escrito de apelación tuviere defectos y el apelante no los subsanare dentro del plazo expuesto.

**(b) Por abandono, cuando el apelante incumpla sin justa causa con las órdenes de la Junta de Síndicos.** (Énfasis suplido).

Además, la Sección 11 (c) del referido Artículo dispone que *[l]a incomparecencia del apelante [a la Vista Administrativa] sin causa justificada podrá dar lugar a la desestimación de la querella y al cierre y archivo del caso [...]*. (Énfasis suplido).

### III.

En su recurso de revisión judicial, la recurrente cuestiona la determinación de la Junta de Retiro de desestimar con perjuicio su solicitud de apelación. Según establece el Artículo 6, Sección 5 del Reglamento Núm. 7053, la Junta de Retiro podrá desestimar una apelación por abandono, cuando el apelante incumpla sus órdenes sin justa causa. Aún más, la Sección 11 (c) faculta a la Junta de Retiro a desestimar y archivar el caso ante la incomparecencia del apelante a la Vista Administrativa.

Un examen de la relación procesal del caso revela que la Sra. Rivera Martínez incumplió reiteradamente con las órdenes y citaciones que emitió la Junta de Retiro, la cual, a su vez, le concedió múltiples oportunidades para rectificar tales incumplimientos.

El 17 de agosto de 2023, se celebró la primera Conferencia con Antelación a Vista y la Sra. Rivera Martínez no compareció. Ante la incomparecencia, se emitió una *Orden* en la cual se le concedió a la recurrente un término de diez (10) días para que mostrara justa causa por la cual no se le debían imponer sanciones. Ese mismo día, la recurrente cumplió con lo ordenado por la Oficial Examinadora y presentó justa causa para su incomparecencia. Dado por cumplido lo ordenado, el foro recurrido debidamente procedió a señalar y notificar las fechas para la celebración de la Conferencia con Antelación a Vista y la Vista Administrativa.

El 28 de septiembre de 2023, se celebró la segunda Conferencia con Antelación a Vista, nuevamente, sin la comparecencia de la Sra. Rivera Martínez, a pesar de haber sido debidamente citada. Ante la incomparecencia, el foro emitió una *Orden* concediéndole a la recurrente un primer término de diez (10) días para mostrar justa causa por la cual no se le debían imponer sanciones. La Sra. Rivera Martínez incumplió con lo ordenado. No obstante, la Oficial Examinadora dictaminó otra *Orden* otorgándole un segundo término de diez (10) días para que cumpliera con lo ordenado el 28 de septiembre de 2023. Una vez más, la peticionaria incumplió con las órdenes del foro administrativo.

Posteriormente, el 27 de octubre de 2023, se celebró la Vista Administrativa sin la comparecencia de la Sra. Rivera Martínez. Debido al reiterado incumplimiento de la recurrente con las órdenes y citaciones del foro recurrido, luego de celebrada la Vista, la Oficial Examinadora dio por sometido el recurso por falta de interés.

El 1 de noviembre de 2023, la parte recurrente solicitó reconsideración e informó que se encontraba en conversaciones avanzadas para lograr un acuerdo transaccional. Así las cosas, la Junta de Retiro declaró Con Lugar la reconsideración y concedió un término de diez (10) días para que informara al foro sobre el acuerdo transaccional llegado entre las partes. El término venció sin que la Sra. Rivera Martínez

cumpliera con lo ordenado. Como consecuencia, el caso quedó sometido por falta de interés mediante *Orden* del 14 de noviembre de 2023.

Inconforme, el 21 de noviembre de 2023, la Sra. Rivera Martínez presentó una moción en la cual adujo que el acuerdo transaccional con el Municipio había sido finiquitado el 3 de noviembre de 2023, apenas dos (2) días luego de emitida la *Orden* del 1 de noviembre de 2023. A pesar de haberse finiquitado el acuerdo, la recurrente dejó transcurrir el término concedido para informar a la Junta de Retiro sobre el mismo. No fue hasta el 21 de noviembre de 2023, dieciocho (18) días luego de finiquitado el acuerdo, que la parte recurrente decidió informar al foro recurrido sobre el acuerdo alcanzado.

Debido a los reiterados incumplimientos de la Sra. Rivera Martínez, el 18 de enero de 2024, la Junta de Retiro emitió una *Resolución*, notificada el 23 de enero de 2024, archivando con perjuicio el caso de epígrafe.

Al examinar el tracto procesal de este caso, a este Tribunal le queda claro que la Junta de Retiro le concedió a la Sra. Rivera Martínez múltiples oportunidades para explicar sus incomparecencias e incumplimientos. Tales concesiones, no permiten acoger la postura de la Sra. Rivera Martínez de que la Junta de Retiro abusó de su discreción al archivar con perjuicio la apelación.

En efecto, la Sra. Rivera Martínez presentó ante la Junta de Retiro el acuerdo transaccional finiquitado. Sin embargo, fue presentado fuera del término otorgado por el foro administrativo, a pesar de este haber sido perfeccionado dentro del término, demostrando, una vez más, la desatención y el abandono total de la parte recurrente. La Junta de Retiro le concedió a la Sra. Rivera Martínez más de un término para que justificara sus incumplimientos y mostrara causa por sus incomparecencias, la cual incluyó la ausencia a la Vista Administrativa. Resulta forzoso concluir que la Junta de Retiro de retiro no abusó de su discreción al desestimar con perjuicio el caso de epígrafe.

**IV.**

Por los fundamentos expuestos, se *Confirma* la *Resolución* recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones