ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| JUAN ÁNGEL SANTIAGO GONZÁLEZ H/N/C GAMEBOAT YACHT BROKERAGE<br><br>APELADOS<br><br>V.<br><br>KENNETH LA QUAY VELÁZQUEZ; FULANA DE TAL Y LA SOCIEDAD DE BIENES GANANCIALES CONSTITUIDA ENTRE AMBOS<br><br>APELANTES | KLAN202500516 | *APELACIÓN* procedente del Tribunal de Primera Instancia Sala de San Juan<br><br>Caso Núm. SJ2023CV05923<br><br>Sobre:<br><br>Acción Civil – Sentencia Declaratoria |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Alvarez Esnard, y la jueza Prats Palerm

Brignoni Mártir, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de agosto de 2025.

Comparece ante nos, Kenneth La Quay Velázquez; Fulana De Tal y La Sociedad De Bienes Gananciales constituida entre ambos, (en adelante, "la parte apelante"). A los fines de solicitar nuestra intervención para que dejemos sin efecto la determinación emitida y notificada el 13 de diciembre de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante la referida determinación, dicho tribunal declaró *Ha Lugar* la "*Demanda y Sentencia Declaratoria*," presentada por la parte apelada. Todo, dentro de un pleito sobre sentencia declaratoria entablado por Juan Ángel Santiago González H/N/C Gameboat Yacht Brokerage, (en lo sucesivo, en conjunto, "la parte apelada").

Por los fundamentos que expondremos a continuación, *confirmamos* la *"Sentencia"* apelada.

**I.**

El 20 de junio de 2023, la parte apelada, presentó "*Demanda y Sentencia Declaratoria*". En esencia, alegó que en el mes de septiembre de

2022 fue contactada por la parte apelante para que le tramitara la búsqueda de una embarcación. Arguyó que consiguió la embarcación y envió a la parte apelante el contrato para adquirir la misma. Así las cosas, aduce que el 9 de septiembre de 2022 la parte apelante firmó el contrato de compraventa aceptando adquirir una embarcación Boston Whaler 370 Outrage del año 2016 por $369,000.00. Sobre los términos del contrato, alegó que la parte apelante tenía que pagar un depósito equivalente al 10% del cual dicha parte solo pagó el 5% ($18,450.00). De igual modo, arguyó que la parte apelante se obligó a obtener un financiamiento para la compra de la embarcación, cuyo incumplimiento llevaba la consecuencia de una retención del depósito efectuado. Sostuvo que, la referida parte incumplió con su obligación al no obtener el financiamiento estipulado. A pesar de ello, alegó que la parte apelante le exigió la devolución del dinero que dio como depósito.  En virtud de lo expuesto, solicitó su derecho a mantener el depósito recibido por incumplimiento con los acuerdos pactados. Además, peticionó que se declare que la parte apelante incumplió con sus obligaciones.

Así las cosas, el 27 de junio de 2023, el foro primario expidió el emplazamiento.

Posteriormente, el 5 de septiembre de 2023, la parte apelada presentó una "*Moción Sometiendo Emplazamiento y Solicitando Emplazamiento por Edicto*". En lo atinente, sostuvo que habían sido infructuosas las gestiones para diligenciar el emplazamiento personal de la parte apelante. Argumentó que se había podido comunicar con la parte apelante por teléfono y al ésta enterarse de que era el demandado dejó de contestar las llamadas.

El 7 de septiembre de 2023, el foro primario, emitió y notifico una "*Orden*". Mediante esta, declaró *No Ha Lugar* la "*Moción Sometiendo Emplazamiento y Solicitando Emplazamiento por Edicto*" al considerar que las gestiones informadas en la declaración jurada del emplazador fueron insuficientes.

En respuesta, el 19 de octubre de 2023, la parte apelada presentó una *"Segunda Moción Urgente Solicitando Emplazamiento por Edicto"*. En lo atinente, sostuvo que el emplazador realizó gestiones adicionales, acudiendo personalmente a dos direcciones residenciales en las que por información y creencia se podría localizar a la parte apelante. Además, alegó que el emplazador se comunicó con dicha parte y con quien entendía que era su señor padre. A su vez, detalló que el referido emplazador acudió al lugar de trabajo de la parte apelante y conversó con agencias gubernamentales. A pesar de las aludidas gestiones, sostuvo que resultó infructuoso diligenciar el emplazamiento personal de la parte apelante.

Ante ello, el 3 de noviembre de 2023, el foro apelado autorizó y expidió el emplazamiento por edicto, solicitado por la parte apelada. Acto seguido, el 4 de marzo de 2024, la parte apelada presentó una "*Moción Solicitando Anotación de Rebeldía y que se Dicte Sentencia Conforme*". A través de esta, informó que el 4 de diciembre de 2023, la parte apelante fue emplazada por edicto y hasta esa fecha dicha parte no había presentado alegación responsiva. Por lo tanto, solicitó la anotación de la rebeldía y que se dictara sentencia declarando *Ha Lugar* la "*Demanda y Sentencia Declaratoria*".

Posteriormente, el 18 de marzo de 2024, el foro apelado emitió una "*Orden*". Mediante esta, anotó la rebeldía de la parte apelante. A su vez, señaló vista en su fondo para el 15 de abril de 2024.

Así las cosas, el 10 de abril de 2024 la parte apelada presentó una "*Moción de Sentencia Sumaria*". En lo atinente, arguyó que no existe controversia sobre los hechos materiales del caso. Adujo como hechos incontrovertidos que, se acordó entre las partes la compra de una embarcación, la cual fue efectivamente conseguida por la parte apelada. Añadió, que, como parte del acuerdo, la parte apelante debía realizar un depósito equivalente al 10% del precio de compra. Sin embargo, solo pagó el 5%. Además, agregó como hecho no controvertido que la parte apelante incumplió con su obligación de obtener el financiamiento estipulado y a

pesar de ello peticionó la devolución del dinero entregado. Así pues, solicitó que se dictara sentencia sumaria en rebeldía declarando *Ha Lugar* la "*Demanda y Sentencia Declaratoria*". En consecuencia, peticionó que se declarara que tiene derecho a retener el depósito pactado, debido al incumplimiento de la parte apelante con sus obligaciones. De igual modo, peticionó la imposición de honorarios de abogados por temeridad.

El 13 de diciembre de 2024, el foro apelado emitió la "*Sentencia*" que hoy nos ocupa. En la misma, declaró *Ha Lugar* la "*Moción de Sentencia Sumaria*". En consecuencia, concedió los remedios peticionados en la "*Demanda y Sentencia Declaratoria*". Así pues, dispuso que la parte apelada tiene el derecho a retener el depósito de los $18,450.00 por el incumplimiento de la parte apelante con las obligaciones asumidas. Además, le impuso a la parte apelante el pago de honorarios de abogado y costas. Así pues, el 26 de diciembre de 2024, se le publicó el edicto notificando la Sentencia a la parte apelante.

En respuesta, el 7 de enero de 2025, la parte apelante presentó una "*Moción de Reconsideración y Solicitando Relevo de Sentencia*".[1] Alegó que fue objeto de dolo y engaño al suscribir el contrato en cuestión. Particularmente al obligarse a las condiciones de financiamiento pactadas. Levantó como defensa que la referida relación contractual era una de adhesión, por lo cual sus cláusulas se deben interpretar en consideración a la parte que no participó en la redacción contractual. De otra parte, adujo que desconocía a lo que se había comprometido, por lo que no pudo conseguir el financiamiento, al ninguna compañía de Puerto Rico querer financiar una embarcación que se encontrara fuera de Puerto Rico. A su vez, alegó que le comunicó a la parte apelada la situación de no poder realizar la compraventa. Además, arguyó que la retención del depósito era abusiva y que verbalmente le solicitó a la referida parte la devolución del dinero. Finalmente, alegó que no fue emplazado conforme a derecho, toda vez que el emplazamiento se diligenció a destiempo y en ausencia de las

---

[1] La parte apelada acompañó su solicitud de Sentencia Sumaria con la siguiente prueba documental: "Declaración Jurada" suscrita por Juan Ángel Santiago González.

gestiones específicas para lograr la procedencia de un emplazamiento por edicto. En vista de ello, solicitó que se declarara nulo el emplazamiento por edicto al transcurrir los términos previstos; que se desestime la causa de acción de la parte apelada; y que se deje sin efecto la "*Sentencia*" dictada.

En respuesta, el 3 de abril de 2025, la parte apelada presentó una "*Moción en Oposición a Solicitud de Reconsideración*". Reiteró, que las partes firmaron un contrato de compraventa para la adquisición de una embarcación, y que la parte apelante entregó únicamente el depósito equivalente al 5% del precio de compraventa y no el 10% que se había estipulado. Además, sostuvo que la parte apelante no logro realizar el financiamiento pactado. Por consiguiente, ella retuvo el depósito entregado, según se había advertido en la relación contractual. Por otro lado, adujo que la parte apelante tuvo oportunidad de comparecer al pleito y no lo hizo, demostrando así temeridad y actitud contumaz. Ante ello, solicitó que se declarara *No Ha Lugar* la "*Moción de Reconsideración y Solicitando Relevo de Sentencia*".

En atención de los escritos presentados, el 9 de mayo de 2025, el foro apelado emitió una "*Resolución*". Mediante la cual declaró *No Ha Lugar* la solicitud de reconsideración.

En desacuerdo el 6 de junio de 2025, la parte apelante presentó un recurso de apelación. En su escrito señaló los siguientes errores:

1. Erró el Honorable Tribunal de Instancia abuso de su discreción al resolver que en el presente caso se cumplió con los requisitos la existencia de una controversia actual o justiciable.

2. Erró el Honorable Tribunal de Instancia y abusó de su discreción permitir un proceso de emplazamiento por edicto cuando los emplazamientos habían vencido y permitir una notificación de sentencia mediante una carta que carecía de fecha.

3. Erró el Honorable Tribunal de Instancia y abusó de su discreción permitir que prevaleciera un contrato claramente leonino cuyo mayor peso se daba a la cláusula penal.

4. Erró el Honorable Tribunal de Instancia y abusó de su discreción condenar al demandado al pago de $10,000.00 en honorarios de abogados el cual constituye el 55% de los $18,495.00 que retuvo el demandante como comisión sin vender nada.

El 12 de junio de 2025, este Tribunal emitió "*Resolución*." Mediante esta, le indicó a la parte apelada que contaba con el término reglamentario para presentar su oposición a la *apelación.*

Así las cosas, el 9 de julio de 2025, la parte apelante presentó *"Moción bajo la Regla 82(A) del Reglamento del Tribunal de Apelaciones."* A través de esta, informó que el señor Juan Ángel Santiago González falleció el 17 de junio de 2025.

Ante tal acontecimiento, el 17 de julio de 2025, esta Curia emitió una *"Resolución"* en la se le concedió a la parte apelada un término a vencer el 8 de agosto de 2025 para presentar comparecencia o sustitución de parte. Se advirtió que, transcurrido el referido término, procederíamos a disponer del asunto ante nuestra consideración.

Vencido el aludido término, procedemos a disponer de la controversia ante nos.

**II.**

**A.     Sentencia Declaratoria**

La acción solicitando una sentencia declaratoria se rige por la Regla 59 de Procedimiento Civil, 32 LPRA Ap. V, R. 59.1-59.5. Las sentencias declaratorias son presentadas para que el Tribunal de Primera Instancia declare derechos, estados y otras relaciones jurídicas, aun cuando pueden existir otros remedios disponibles. Véase, 32 LPRA Ap. V, R. 59.2. En lo pertinente, la precitada Regla lee como sigue:

> **Regla 59.2. Quiénes pueden solicitarla; facultad de interpretación; ejercicio de las facultades**
>
> (a) Toda persona interesada en una escritura, un testamento, un contrato escrito u otros documentos constitutivos de contrato, o cuyos derechos, estado u otras relaciones jurídicas fuesen afectados por un estatuto, una ordenanza municipal, un contrato o una franquicia, podrá solicitar una decisión sobre cualquier divergencia en la interpretación o validez de dichos estatutos, ordenanzas, contrato o franquicia, y además que se dicte una declaración de los derechos, estados u otras relaciones jurídicas que de aquéllos se deriven. Un contrato podrá ser interpretado antes o después de haber sido infringido.
>
> (b) […]

Además, la Regla 59.3 establece el alcance de la discreción del Tribunal de Primera Instancia en este tipo de asuntos. La precitada regla lee como sigue:

**Regla 59.3. Discreción del tribunal**

El Tribunal podrá negarse a dar o a registrar una sentencia o decreto declaratorio cuando tal sentencia o decreto, de ser hecho o registrado, no haya de poner fin a la incertidumbre o controversia que originó el procedimiento.

La persona que presenta una solicitud de sentencia declaratoria se encuentra a su vez sujeta al cumplimiento de los criterios de legitimación activa, por lo cual deberá establecer la existencia o inminencia de un daño claro y real. *Mun. de Fajardo v. Srio. Justicia*, 187 DPR 245, 254-255 (2012).

En otras palabras, la sentencia declaratoria constituye un recurso con fines remediales y preventivos que posibilita resolver por adelantado los méritos de una reclamación ante los tribunales, siempre que exista una amenaza potencial para quien la solicita. *Sánchez et al. v. Srio de Justicia et al.*, 157 DPR 360, 384 (2002). No obstante, este recurso debe emplearse únicamente para resolver situaciones de duda o inseguridad respecto a los derechos de las partes, de manera que favorezca la estabilidad y la paz social. *Moscoso v. Rivera*, 76 DPR 481, 488 (1954).

**B.    Emplazamiento**

El emplazamiento constituye el procedimiento a través del cual se informa al demandado sobre la existencia de una demanda en su contra, lo que faculta al tribunal para ejercer jurisdicción sobre dicha persona. *Bernier González v. Rodríguez Becerra,* 200 DPR 637, 644 (2018); *Cirino González v. Adm. Corrección et al.,* 190 DPR 14, 29-30 (2014); *Banco Popular v. SLG Negrón,* 164 DPR 855, 863 (2005). Mediante el emplazamiento se cumplen los requisitos del debido proceso de ley, el cual exige que el demandado sea notificado de cualquier reclamación en su contra, brindándole así la oportunidad de presentarse al juicio, defenderse y ofrecer pruebas en su beneficio. *Global Gas v. Salaam Realty*, 164 DPR 474, 480 (2005).

En virtud de lo expuesto, los demandados tienen el derecho a ser emplazados de acuerdo con lo establecido por la ley. *Sánchez Rivera v. Malavé Rivera*, 192 DPR 854, 869 (2015). En caso contrario, cualquier sentencia emitida sin que el tribunal tenga jurisdicción sobre las partes o que se dicte en violación del debido proceso legal carece de validez y resulta nula. *García Colón v. Sucn. González,* 178 DPR 527, 543 (2010); *Figueroa v. Banco de San Juan,* 108 DPR 680, 688 (1979); *Rodríguez v. Albizu,* 76 DPR 631, 636-638 (1954). De igual forma, para que una resolución u orden tenga eficacia, es indispensable que provenga de un tribunal con jurisdicción y que sea notificada correctamente a las partes involucradas. *Banco Popular v. Andino Solis, 192 DPR 172, 183 (2015).*

La Regla 4 de Procedimiento Civil de 2009, 32 LPRA Ap. V, y su jurisprudencia interpretativa fija los criterios normativos aplicables al emplazamiento. En específico, la Regla 4.1 del Procedimiento Civil, *supra*, establece que el demandante debe presentar el formulario de emplazamiento junto con la demanda, para que sea emitido de inmediato por el Secretario o la Secretaria. Una vez expedido, el emplazamiento deberá diligenciarse conforme a las opciones previstas en la Regla 4.3(b), a saber:

1) Mediante la entrega personal en la forma prescrita en el inciso (a) de esta regla;
2) De la manera prescrita por ley en el lugar en que se llevará a cabo el emplazamiento en sus tribunales de jurisdicción general;
3) Mediante carta rogatoria al país extranjero donde se encuentre la parte demandada;
4) Por edictos según lo dispuesto en la Regla 4.6;
5) Conforme disponga el tribunal.

32 LPRA Ap. V, R. 4.3(b).

El término que tiene la parte demandante para diligenciar el emplazamiento es de 120 días, "a partir de la presentación de la demanda o de la fecha de expedición del emplazamiento por edicto". *32 LPRA Ap. V, R. 4.3(c).* Por otro lado, la Regla 4.6 del Procedimiento Civil, *supra*, regula el proceso a seguir cuando el emplazamiento al demandado se efectúa mediante edictos. En términos generales, el inciso (a) de dicha regla establece que el tribunal podrá ordenar el emplazamiento por edictos en

las siguientes situaciones: (1) cuando la persona a ser emplazada esté fuera de Puerto Rico; (2) **cuando estando en Puerto Rico no pudo ser localizada después de realizadas las diligencias pertinentes o se oculte para no ser emplazada; o,** (3) si es una corporación extranjera sin agente residente. (Énfasis suplido). El inciso (a) también establece que, para que el tribunal autorice el emplazamiento por edictos, no será necesario contar con un diligenciamiento negativo previo. En su lugar, la parte interesada deberá presentar una declaración jurada que demuestre, ante la satisfacción del tribunal, las gestiones realizadas para emplazar al demandado, y que de dicha declaración o de la demanda se desprenda una reclamación que justifique la concesión de un remedio contra la persona a ser emplazada o que sea parte pertinente. *32 LPRA Ap. V, R. 4.6(a).*

La orden judicial que autorice el emplazamiento por edicto establecerá que la publicación se realice una única vez en un periódico de circulación general en Puerto Rico. *Id,* Además, dentro de los diez (10) días posteriores a dicha publicación, la parte demandante deberá enviar a la parte demandada una copia del emplazamiento y de la demanda mediante correo certificado con acuse de recibo, o cualquier otro método de entrega con comprobante de recepción. *Id.*

Por su parte, en el caso *Sánchez Ruiz v. Higueras Pérez*, el Tribunal Supremo de Puerto Rico aclaró el cómputo y el efecto del término para emplazar por edictos, explicando lo siguiente:

> "Conforme al derecho previamente esbozado, la Regla 4.3(c), supra, dispone que el término para emplazar por edictos comienza a transcurrir cuando el tribunal lo expide. La parte demandante tiene que solicitar su expedición antes de que finalice el término para diligenciar el emplazamiento personal. Así pues, una vez se intenta sin éxito emplazar personalmente a un demandado, y tras acreditar las diligencias realizadas para citarlo personalmente se solicita emplazarlo por edictos dentro del plazo de ciento veinte días, comienza a decursar un nuevo término improrrogable de ciento veinte días para emplazar por edictos, una vez se expida el correspondiente emplazamiento. Véase Bernier González v. Rodríguez Becerra, supra, pág. 650. Como explicamos, esto se debe a que el emplazamiento por edicto constituye un nuevo emplazamiento, distinto al emplazamiento personal que se expide automáticamente con la presentación de la demanda. Resolver lo contrario constituiría acortar el término para diligenciar los emplazamientos por edictos, penalizar al demandante que actuó diligentemente dentro del plazo establecido por ley para diligenciar

los emplazamientos personales e imponerle una carga no contemplada por las Reglas de Procedimiento Civil." *Sanchez Ruiz v. Higueras Perez et al.*, 203 DPR 982, 994-995 (2020).

Los requisitos para el emplazamiento por edicto garantizan el debido proceso en su aspecto procesal, por lo que su cumplimiento debe ser riguroso; de lo contrario, se afecta la jurisdicción del tribunal sobre la persona demandada y cualquier sentencia emitida será nula. *Banco Popular v. S.L.G. Negron*, 164 DPR 855, 866 (2005).

**C.     Obligaciones y Contratos**

Establece el Código Civil en su Artículo 1230 que "[e]l contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones." 31 LPRA sec. 9751. "Lo acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley." Art. 1233, 31 LPRA sec. 9754. En todo caso, "[e]l contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva". Art. 1237, 31 LPRA sec. 9771.

Conforme dispone el Artículo 1062 del Código Civil de Puerto Rico, "[t]anto el deudor como el acreedor deben actuar de buena fe en el cumplimiento de la obligación." 31 LPRA sec. 8983. Asimismo, el Artículo 1119 establece que, "[e]l acreedor no puede ser compelido a recibir parcialmente las prestaciones en las que consiste obligación, salvo cuando el contrato o la ley expresamente lo autorizan." "Sin embargo, si la deuda tiene una parte líquida y otra ilíquida, el acreedor puede exigir, y el deudor puede hacer el pago de la primera, sin esperar a que se liquide la segunda." 31 LPRA sec. 9143.

En Puerto Rico, el principio de autonomía de la voluntad también prevalece en las relaciones contractuales, otorgando a las partes una gran libertad para comprometerse según su propia voluntad. *BPPR v. Sucn. Talavera, 174 D.P.R. 686, 693 (2008).* La aludida norma está recogida en

el Artículo 1232 del Código Civil, el cual dispone que "[l]as partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público". 31 LPRA sec. 9753; *Álvarez de Choudens v. Rivera Vázquez,* 165 DPR 1, 17 (2005); *Irizarry López v. García Cámara,* 155 DPR 713, 724 (2001).

Como reglan general los contratos quedan formalizados con solo en consentimiento de las partes. Art. 1237, 31 LPRA sec. 9771. Los contratos resultan vinculantes cuando se cumplen los requisitos legales o convenidos para su validez. Art. 277, 31 LPRA sec. 6161.

En caso de que alguno de los contratantes faltare al cumplimiento de lo estipulado, se observará lo dispuesto en los Artículos 1158 y 1255 del *Código Civil,* 31 LPRA sec. 9303 y 9823.

En lo pertinente a la cláusula penal, la misma lee como sigue:

Las partes pueden pactar cláusulas contractuales con el propósito de evitar el incumplimiento parcial o el retraso del cumplimiento de la obligación principal. Las cláusulas así convenidas pueden consistir en el pago de una suma cierta, la pérdida del beneficio del plazo o en cualquier otra pena.

Aunque el tribunal tiene facultad para atemperar las penas en casos de extrema desproporción económica entre la pena y la prestación, debe reconocer la obligatoriedad de las cláusulas convenidas y solo en tales casos puede sustituirlas o moderarlas.

En la aplicación de la cláusula penal, se observarán las reglas siguientes:

(a)    El pago de la pena convenida corresponde exclusivamente al incumplimiento o al retraso;
(b)    el acreedor puede optar por exigir el cumplimiento íntegro o por el pago de la pena, y puede acumular ambos remedios en el caso de cumplimiento tardío;
(c)    la cláusula penal se interpreta restrictivamente; y
(d)    solo puede sustituirse la prestación debida por la convenida en la cláusula penal, si se ha convenido expresamente.

Además de las cláusulas penales, los contratantes pueden convenir otras que están relacionadas con el cálculo anticipado del daño causado por el incumplimiento. En tal caso, el acreedor no está obligado a probar el daño ni el deudor puede eximirse al acreditar que el daño no se verificó o fue de menor cuantía. Las cláusulas penales y las que pre calculan el daño pueden convenirse conjuntamente, siempre que así conste de forma clara en el contrato.

31 LPRA sec. 9832.

Por su parte, el Código Civil de Puerto Rico describe como contrato de adhesión "si el aceptante se ve precisado a aceptar un contenido predispuesto." "Las cláusulas del contrato celebrado por adhesión se

interpretan en sentido desfavorable a la persona que las redacta y en favor

de la persona que se vio precisada a aceptar su contenido." Art. 1248, 31

LPRA sec. 9802. Las clausulas abusivas leen como sigue:

> Son especialmente anulables en los contratos celebrados por adhesión las siguientes cláusulas:
>
> (a)   la que no se redacta de manera clara, completa y fácilmente legible, en idioma español o inglés;
> (b)   la que autoriza a la parte que la redactó a modificar, unilateralmente, los elementos del contrato;
> (c)   la que le prohíbe o limita al adherente la interposición de acciones, y restringe las defensas o los medios de prueba a disposición del adherente, o invierte la carga de la prueba;
> (d)   la que excluye o limita la responsabilidad de la parte que la redactó;
> (e)   la que cambia el domicilio contractual del adherente sin que medien razones para ello;
> (f)   la que, ante el silencio del adherente, prorroga o renueva un contrato de duración determinada; y
> (g)   la que excluye la jurisdicción de una agencia reglamentadora.
>
> Art. 1249, 31 LPRA sec. 9803.

El tribunal, al resolver disputas relacionadas con contratos de

adhesión, tiene la función principal de evaluar la presencia de cláusulas

ambiguas. En caso de ambigüedad, las disposiciones deben interpretarse

en favor de la parte que no participó en su redacción. Sin embargo, si no

hay ambigüedad, el contrato se interpretará según sus términos. Además,

el tribunal puede evaluar la razonabilidad de las cláusulas para garantizar

un equilibrio contractual y evitar iniquidades. Véase, *Coop. Sabaneña v.*

*Casiano Rivera,* 184 DPR 169, 177*; Arthur Young & Co. v. Vega III,* 136

DPR 157*,* 166*; Serrano Picón v. Multinational Life Ins.,* 212 DPR 981, 990-

991.

## D.      Honorarios de abogado

La Regla 44.1 (d) de Procedimiento Civil, 32 LPRA Ap. V, reconoce la

facultad discrecional del foro de primera instancia para imponer honorarios

por temeridad al disponer que "[e]n caso que cualquier parte o su abogado

o abogada haya procedido con temeridad o frivolidad, el tribunal deberá

imponerle en su sentencia al o a la responsable el pago de una suma por

concepto de honorarios de abogado que el tribunal entienda corresponda a

tal conducta". Véase, *Andamios de P.R. v. JPH Contractors, Corp.*, 179

DPR 503, 519-520 (2010). Esta sanción pecuniaria por conducta temeraria

tiene el propósito de disuadir la litigación frívola y fomentar las transacciones mediante sanciones que compensen a la parte victoriosa los perjuicios económicos y las molestias producto de la temeridad de la otra parte. *Marrero Rosado v. Marrero Rosado,* 178 DPR 476, 505 (2010).

Aun cuando la norma procesal no define expresamente el concepto temeridad, en *Fernández v. San Juan Cement Co. Inc.,*118 DPR 713, 718 (1987), el Tribunal Supremo citó la definición del comentarista Hiram Sánchez Martínez, la cual reza como sigue:

> La temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y administración de la justicia. También sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y a la contratación de servicios profesionales, incluyendo abogados, con el gravamen a veces exorbitante para su peculio. H. Sánchez, *Rebelde sin Costas*, 4(2) Boletín Judicial 14 (1982).

Nuestro Alto Foro ha expresado, además, que "un litigante actúa con temeridad cuando con terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconvenientes de un pleito". *S.L.G. Flores–Jiménez v. Colberg,* 173 DPR 843, 866 (2008), seguido en *C.O.P.R. v. S.P.U.*, 181 DPR 299, 342 (2011). Ha opinado también que "es temerario quien niega totalmente su responsabilidad en los hechos que motivan la demanda, cuando conocía o debió conocer, que su negligencia causó o contribuyó al daño sufrido y obliga a la parte demandante a litigar extensamente su caso, especialmente el aspecto de la negligencia". *SLG González-Figueroa v. SLG et al.* 209 DPR 138, 150 (2022).

La determinación de si un litigante ha incurrido en temeridad descansa en la sana discreción del tribunal sentenciador. *Torres Vélez v. Soto Hernández*, 189 DPR 972, 993-994 (2013). Una vez determinada la temeridad, la imposición de honorarios de abogado es mandatorio. *Montañez v. U.P.R.,* 156 DPR 395, 442 (2002). Igualmente, le corresponde al tribunal primario imponer la cuantía que entienda procedente en respuesta a la conducta temeraria. *Meléndez Vega v. El Vocero de PR,*

supra, pág. 211 (2013). De manera que, los tribunales descansarán en su discreción y determinarán la suma a concederse por: (1) el grado de temeridad; (2) el trabajo realizado; (3) la duración y naturaleza del litigio; (4) la cuantía involucrada, y (5) el nivel profesional de los abogados. *C.O.P.R. v. S.P.U., supra*, págs. 342-343.

Ante ello, los tribunales apelativos no debemos intervenir con el ejercicio de esa discreción, salvo que se demuestre que hubo un craso abuso de discreción, que el foro recurrido actuó con prejuicio o parcialidad, que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, o cuando la cuantía impuesta sea excesiva. *P.R. Oil v. Dayco,* 164 DPR 486, 511 (2005).

**III.**

En su primer señalamiento de error, la parte apelante aduce que incidió el foro primario al resolver que en el presente caso se cumplió con los requisitos de la existencia de una controversia actual o justiciable. Sobre el particular sosotiene, que de los hechos surge que las partes celebraron un contrato que contenía una cláusula específica estableciendo que, en caso de incumplimiento por la parte apelante con el financiamiento acordado, la parte apelada podría retener el depósito entregado. La parte apelante incumplió con el financiamiento, lo que activó la cláusula de retención. Ante ello, la parte apelada acudió al foro primario solicitando una sentencia declaratoria que aclarara sus derechos bajo el contrato y validara su derecho a retener el depósito.

Conforme a la Regla 59 de Procedimiento Civil, 32 LPRA Ap. V, R. 59.1-59.5, la acción de sentencia declaratoria permite a toda persona interesada en un contrato escrito solicitar del tribunal una decisión sobre cualquier divergencia en la interpretación o validez del contrato, así como una declaración de los derechos que se deriven de este. Además, la Regla 59.3*, supra* otorga al tribunal discreción para conceder o denegar la sentencia declaratoria, pero únicamente podrá denegarla cuando su

otorgamiento no contribuya a poner fin a la incertidumbre o controversia existente.

Por otro lado, conforme a la jurisprudencia vigente, la parte solicitante de una sentencia declaratoria debe demostrar legitimación activa mediante la existencia o inminencia de un daño claro y real que amenace sus derechos. *Mun. de Fajardo v. Srio. Justicia*, supra. En este caso, la controversia sobre la devolución o retención del depósito, así como la aplicación de la cláusula contractual, generaba una situación de incertidumbre que justificaba el recurso de sentencia declaratoria, pues existía un riesgo real de que la parte demandante se viera privada de un derecho adquirido conforme al contrato.

A la luz de lo anterior, este Tribunal determina que el Tribunal de Primera Instancia actuó correctamente al concluir que la parte apelada cumplió con los requisitos para la concesión de una sentencia declaratoria y que, contrario a lo alegado por la parte apelante, las declaraciones sometidas fueron suficientes para establecer la controversia y el peligro de lesión a los derechos de la parte demandante.

En su segundo señalamiento de error, la parte apelante argumenta que incidió el foro primario al autorizar el emplazamiento por edicto cuando el término para diligenciar el emplazamiento había vencido. Añade que también erró al permitir una notificación de sentencia mediante una carta que carecía de fecha. Los hechos del expediente reflejan que el 27 de junio de 2023 el Tribunal de Primera Instancia expidió el emplazamiento inicial. Luego, el 5 de septiembre de 2023, la parte apelada presentó una moción informando que no había podido diligenciar el emplazamiento personal y solicitó autorización para emplazar por edicto. El tribunal declaró *No Ha Lugar* dicha solicitud el 7 de septiembre de 2023, por considerar que las gestiones descritas en la declaración jurada del emplazador resultaban insuficientes.

Sin embargo, tras esta determinación, el 19 de octubre de 2023, la parte apelada presentó *"Segunda Moción Urgente Solicitando*

*Emplazamiento por Edicto*" en la que detalló gestiones adicionales realizadas para localizar a la parte apelante. Estas incluyeron visitas presenciales a dos direcciones, llamadas telefónicas, contacto con quien aparentaba ser su padre, visitas a su lugar de trabajo y consultas a agencias gubernamentales. Evaluadas estas nuevas gestiones, el Tribunal de Primera Instancia emitió una orden el 3 de noviembre de 2023 autorizando el emplazamiento por edicto. El 4 de diciembre de 2023 se diligenció el emplazamiento por edicto y, tras el vencimiento del término para alegar, el 4 de marzo de 2024 la parte apelada solicitó la anotación de la rebeldía y la entrada de sentencia conforme. No habiéndose presentado alegación responsiva, el tribunal accedió a la solicitud.

A la luz de la normativa vigente, particularmente lo dispuesto en las Reglas 4.3 y 4.6 del Procedimiento Civil de 2009, 32 LPRA Ap. V, y la jurisprudencia interpretativa, es evidente que el foro primario actuó conforme a derecho. Como reiteró el Tribunal Supremo en *Sánchez Ruiz v. Higueras Pérez*, supra, el término de 120 días para diligenciar un emplazamiento por edicto comienza a decursar desde la expedición de éste, una vez se acredita que las gestiones para emplazar personalmente fueron infructuosas. Conforme esbozado, la parte apelada peticionó por segunda occasion la expedición de emplazamiento por edicto a los 114 días de haberse expedido por la Secretaría del tribunal sentenciador el emplazamiento personal. Es decir, solicitó la autorización de emplazamiento por edicto dentro de 120 días establecidos para cumplir con el correspondiente diligenciamiento. Posterior a ello, el 3 de noviembre de 2023, el foro primario autorizó el emplazamiento por edicto, y el 4 de diciembre de 2023 la parte apelada cumplió con su diligenciamiento. A tenor de lo establecido en *Sánchez Ruiz v. Higueras Pérez*, supra, la parte apelada contaba con un nuevo plazo improrrogable de 120 días para diligenciar el emplazamiento expedido el 3 de noviembre de 2023. Evidentemente al diligenciar el emplazamiento el 4 de diciembre de 2023, la parte apelada cumplió con los 120 días dispuestos para diligenciar un

emplazamiento por edicto una vez expedido. Así pues, el segundo señalamiento de error no fue cometido.

En su tercer senalamiento de error, la parte apelante arguyó que el foro primario erró al permitir que prevaleciera un contrato leonino el cual concedía un peso mayo a la cláusula penal. Del expediente surge, que las partes celebraron un contrato con fuerza vinculante, en el cual la parte apelante se comprometió a cumplir con una gestión de financiamiento como condición para perfeccionar la compraventa. El contrato también contenía una cláusula penal, mediante la cual las partes acordaron que, en caso de incumplimiento por parte de la compradora, la parte vendedora podría retener el depósito entregado como penalidad.

Conforme dispone el Artículo 1230 del Código Civil de Puerto Rico, "[e]l contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones." 31 LPRA sec. 9751. Una vez perfeccionado el contrato mediante el consentimiento de las partes sobre el objeto y la causa, este tiene fuerza de ley entre ellas, sus sucesores y terceros. Art. 1233, 31 LPRA sec. 9754. En este caso, se cumplieron los referidos requisitos de perfeccionamiento contractual. Por lo cual, el contrato en cuestión se convirtió en ley para las partes.

Además, la evidencia presentada ante el foro primario demostró que la parte apelante no cumplió con la condición esencial del financiamiento, lo que activó la cláusula penal pactada. Como regla general, el ordenamiento permite a las partes pactar penalidades contractuales como mecanismo disuasivo ante posibles incumplimientos. Estas cláusulas pueden consistir en la pérdida del beneficio del plazo o en el pago de una suma predeterminada, sin necesidad de que el acreedor demuestre daños reales. Su validez está expresamente reconocida por el Código Civil, sujeto únicamente a la intervención judicial en casos de **extrema desproporción económica**. 31 LPRA sec. 9823-9825.

De igual forma, el principio de buena fe rige la ejecución de los contratos, imponiendo a ambas partes el deber de actuar con lealtad y corrección. Art. 1062, 31 LPRA sec. 8983. La parte apelada actuó conforme a este principio al dar cumplimiento a sus obligaciones contractuales, mientras que la parte apelante incumplió con un elemento esencial del acuerdo. A su vez, en ausencia de ambigüedad o elementos de adhesión desproporcionados, el contrato debe interpretarse conforme a sus propios términos. Del contrato objeto de litigio no se desprenden cláusulas ambiguas o abusivas que ameriten ejercer una interpretación distinta al sentido literal de sus cláusulas. En vista de ello, resulta evidente el incumplimiento de la parte apelante con la obligación contractual pactada, puesto que incumplió con las cláusulas y condiciones esenciales del contrato.

A la luz de lo anterior, este Tribunal concluye que el foro primario actuó correctamente al validar el contrato suscrito entre las partes, reconocer la eficacia de la cláusula penal acordada, y declarar con lugar la retención del depósito como remedio frente al incumplimiento.

En su cuarto señalamiento de error, la parte apelante alega que erró el foro primario al impornerle el pago de $10,000.00 en concepto de honorarios de abogados. La Regla 44.1(d), *supra,* reconoce la facultad del Tribunal de Primera Instancia para imponer honorarios de abogado como sanción ante la presencia de litigación temeraria o frívola. El Tribunal Supremo ha reiterado que incurre en temeridad quien litiga con obstinación, sin fundamentos válidos, y obliga innecesariamente a la parte contraria a asumir los costos y molestias de un pleito. Véase *SLG Flores Jiménez v. Colberg*, supra, *SLG González-Figueroa v. SLG et al.*, supra.

En el presente caso, el Tribunal de Primera Instancia fundamentó su determinación en la conducta de la parte apelante durante el trámite del caso. De los autos se desprende que la parte apelante, con pleno conocimiento de las obligaciones contraídas mediante contrato, negó de forma absoluta su responsabilidad sin fundamento jurídico ni fáctico

razonable, lo que obligó a la parte apelada a extender innecesariamente la litigación. A tales efectos, el foro primario concluyó correctamente que dicha conducta evidenció un patrón de terquedad y contumacia, constitutivo de temeridad procesal.

Así pues, *confirmamos* el dictamen recurrido. De otra parte, según expuesto en el relato procesal, fuimos informados que el señor Juan Ángel Santiago González falleció luego de notificada la *"Sentencia"* que hoy se revisa. Conforme esbozamos, le concedimos un término a la parte apelada para presentar alguna comparecencia o la debida sustitución de parte. Dicho término venció sin tomarse acción alguna y por ello dispusimos del caso, según advertido. Siendo así, una vez advenga final y firme la presente adjudicación, los herederos podrán acudir ante el tribunal de instancia para solicitar la sustitución de parte y la ejecución del dictamen recurrido, si así lo estimasen.

**IV**.

Por los fundamentos expuestos, *confirmamos* la *"Sentencia"* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones