Banco Popular de Puerto Rico, peticionario, *v.* Rafael Negrón Barbosa, su esposa Linnette Toledo Vega y la Sociedad Legal de Gananciales compuesta por ambos, recurridos.

*Número:* CC-2003-540 *Resuelto:* 2 de junio de 2005

858

*Luis M. Ferrer Dávila*, abogado de la parte peticionaria; *Gabriel García Maya*, abogado de la parte recurrida.

La Juez Asociada Señora Rodríguez Rodríguez emitió la opinión del Tribunal.

En esta ocasión revisamos una sentencia dictada por el Tribunal de Apelaciones, mediante la cual se confirmó la determinación del Tribunal de Primera Instancia, Sala de Mayagüez, de desestimar con perjuicio una demanda presentada por el Banco Popular de Puerto Rico, por incum-

plimiento con el término de seis meses provisto en la Regla 4.3(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III, para diligenciar los emplazamientos a la parte demandada. Además, debemos expresarnos por primera vez sobre el requisito de la Regla 4.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, que dispone que el edicto mediante el cual se emplaze al demandado deberá publicarse en "un periódico de circulación diaria general en la Isla de Puerto Rico".

## I

El 27 de junio de 2000 el Banco Popular de Puerto Rico (Banco o Banco Popular) instó ante el Tribunal de Primera Instancia, Sala Superior de Mayagüez, una demanda en cobro de dinero contra el Sr. Rafael Negrón Barbosa, su esposa Linnete Toledo Vega y la sociedad legal de gananciales compuesta por ambos (matrimonio Negrón-Toledo). Alegó que el matrimonio Negrón-Toledo suscribió cuatro préstamos con dicha institución, los cuales estaban vencidos y eran líquidos y exigibles. El 6 de julio de 2000 la Secretaría del tribunal expidió los emplazamientos correspondientes.[1]

El 6 de octubre de 2000 se presentaron en el tribunal unos emplazamientos negativos al no poder ser diligenciados.[2] De la declaración jurada del emplazador se desprende que éste visitó la residencia de los demandados los días 18 de julio, 9 de agosto y 4 de octubre de 2000. Surge, además, que allí lo atendió la Sra. Irene Barbosa, madre del codemandado Rafael Negrón Barbosa, quien le indicó que desconocía el paradero de su hijo y de su nuera.

---

[1] La Secretaría expidió a esos efectos dos emplazamientos: uno a nombre del Sr. Rafael Negrón Barbosa y la Sociedad de Gananciales, y el otro a nombre de la Sra. Linnete Toledo Vega y la Sociedad de Gananciales.

[2] Apéndice, págs. 28–29.

El emplazador no acreditó ninguna otra gestión para lograr emplazar al matrimonio Negrón-Toledo.

El 23 de octubre de 2000, a los cuatro meses de presentada la demanda y evidentemente dentro del término para emplazar, el Banco solicitó del tribunal una autorización para emplazar mediante edicto, arguyendo que las gestiones para localizar a los demandados —las visitas a la residencia— habían sido infructuosas.

Dos meses más tarde y vencido el término de seis meses para emplazar, el tribunal de instancia notificó la orden siguiente:

> Parte demandante ¿se hicieron otras gestiones para localizar a los demandados tales como acudir al correo, al cuartel, a la escuela más cercana, a la dirección de estos conocida, buscar en la guía telefónica? Acredite y luego se autorizará el emplazamiento por edicto. Apéndice, pág. 24.

La referida orden *fue dictada el 28 de diciembre de 2000 y notificada el 5 de febrero de 2001, todo ello fuera del término de los seis meses de la Regla 4.3 de Procedimiento Civil*, supra.

El 22 de febrero de 2001 el Banco presentó su moción en cumplimiento de orden. Acompañó dicha moción con una declaración jurada del emplazador, detallando otras gestiones realizadas para diligenciar los emplazamientos. De dicho documento se desprende que *las referidas gestiones se llevaron a cabo el 13 de febrero de 2001, fuera del término de la citada Regla 4.3(b)*. En la declaración jurada se detallaron las entrevistas siguientes: al policía Omar Méndez, del cuartel de la policía de Mayagüez; al Sr. José R. Alicea, cartero de la ruta de la residencia del matrimonio Negrón-Toledo, y a la Sra. Elisa de los Santos, Auxiliar Administrativa de la Escuela Castillo de Mayagüez.[3]

El 3 de abril de 2001 el tribunal autorizó el emplazamiento mediante edicto. Adviértase que en este momento

---

[3] Apéndice, págs. 26–27.

han transcurrido, aproximadamente, seis meses desde que el Banco Popular solicitó emplazar mediante edicto y la autorización concedida por el tribunal. El edicto fue publicado en el periódico *El Vocero de Puerto Rico* y el Banco envió a los demandados, por correo certificado con acuse de recibo, copia de la demanda y copia de los emplazamientos originales.[4] No incluyó, sin embargo, una copia del emplazamiento mediante edicto.

Así las cosas, el 15 de junio de 2001 los demandados comparecieron al tribunal y, sin someterse a la jurisdicción, adujeron que no habían sido emplazados conforme a derecho. Argumentaron que el Banco Popular no diligenció el emplazamiento dentro de los seis meses de haberse presentado la demanda, así como tampoco se expidió un emplazamiento individual para la sociedad legal de gananciales. Alegaron, además, que el Banco incumplió con los requerimientos de la Regla 4.5 de Procedimiento Civil, *supra*, para emplazar mediante edicto, ya que no se les envió copia de éste ni el edicto fue publicado en un periódico de circulación diaria. Finalmente, alegaron que ellos no fueron notificados individualmente.

*Diez meses más tarde*, el 29 de abril de 2002, el tribunal de instancia dictó una orden para que el Banco mostrara causa por la cual no debía acoger el planteamiento de falta de jurisdicción de la parte demandada. El Banco replicó el 14 de mayo de 2002 y, en síntesis, adujo que el término de seis meses establecido en la Regla 4.3(b), *supra*, puede ser prorrogado por el tribunal por justa causa; que fue diligente en la tramitación del pleito, y que el tribunal tuvo ante su consideración su moción de emplazamientos mediante edicto por espacio de seis meses, sin actuar sobre ésta.

Ocho meses más tarde, el 14 de enero de 2003, el Banco presentó una moción ante el tribunal de instancia reiterando su interés de continuar con el caso y solicitó, nueva-

---

(4) Íd., pág. 33.

mente, que se declarara "sin lugar" la solicitud de desestimación de la parte demandada.

El tribunal, por voz de otra juez, dictó sentencia desestimando con perjuicio la demanda instada por el Banco. Concluyó que las gestiones realizadas por el emplazador fueron hechas fuera del término de seis meses que establece la Regla 4.3(b) de Procedimiento Civil, *supra*, y que no hubo justa causa para extenderlo. Determinó, además, que no se dio cumplimiento estricto a los requisitos de la Regla 4.5 de Procedimiento Civil, *supra*, por no haberse enviado por correo copia de la demanda a cada demandado y porque tampoco se les remitió copia del emplazamiento mediante edicto. Esta sentencia *fue dictada el 13 de septiembre de 2002, mas no fue sino hasta el 25 de febrero de 2003 —cinco meses más tarde— que fue notificada.*

Oportunamente, el Banco solicitó la reconsideración del dictamen. Adujo que la juez que autorizó el emplazamiento mediante edicto en primera instancia, debió entender que existía justa causa para prorrogar el término para emplazar y, por ello, en el ejercicio de su discreción, lo prorrogó de facto. Alegó el demandante que la desestimación era una sanción drástica en su caso, ya que no había demostrado dejadez e inercia en la tramitación del pleito. El foro de instancia declaró "sin lugar" la moción de reconsideración.

Insatisfecho, el Banco Popular presentó un recurso de apelación. El Tribunal de Apelaciones confirmó al foro apelado. Concluyó que el Banco había diligenciado el edicto fuera del término de seis meses y que la única razón para que los demandados no hubieran sido emplazados a tiempo fue la falta de diligencia del Banco. Además, se indicó en la sentencia que el Banco Popular no cumplió estrictamente con la citada Regla 4.5 de Procedimiento Civil al no enviar a cada demandado copia del emplazamiento mediante edicto, y meramente "se limitó a enviar una carta dirigida al Sr. & Sra. Rafael Negrón Barbosa".

Inconforme nuevamente, el Banco Popular recurrió ante nosotros. Nos señala como único error:

> Erró el Tribunal de Circuito de Apelaciones al determinar que el emplazamiento por edictos se realizó luego de seis meses y en su consecuencia confirmar la sentencia original que decretó la desestimación de la demanda con perjuicio. Petición de *certiorari*, pág. 4.

Expedimos el auto y contando con la comparecencia de ambas partes pasamos a resolver.

## II

A. El emplazamiento es el mecanismo procesal que permite al tribunal adquirir jurisdicción sobre el demandado de forma tal que éste quede obligado por el dictamen que finalmente se emita. *Márquez v. Barreto*, 143 D.P.R. 137, 142 (1997). El propósito del emplazamiento es notificar a la parte demandada, a grandes rasgos, que existe una acción judicial en su contra para que, si así lo desea, ejerza su derecho a comparecer en el juicio, ser oído y presentar prueba a su favor. *Rivera v. Jaume*, 157 D.P.R. 562 (2002); *First Bank of P.R. v. Inmob. Nac., Inc.*, 144 D.P.R. 901 (1998); *Acosta v. ABC, Inc.*, 142 D.P.R. 927 (1997); *Bco. Central Corp. v. Capitol Plaza, Inc.*, 135 D.P.R. 760, 763 (1994). Por lo tanto, el método de notificación que se utilice debe ofrecer una probabilidad razonable —a la luz de los hechos del caso— de informarle al demandado de la acción en su contra. El emplazamiento es entonces exigencia del debido proceso de ley, por lo que se requiere una estricta adhesión a sus requerimientos. *First Bank of P.R. v. Inmob. Nac., Inc.*, supra.

La Regla 4.3(b) de Procedimiento Civil, *supra*, dispone lo siguiente en cuanto al término para emplazar:

> El emplazamiento será diligenciado en el término de seis (6) meses de haber sido expedido. Dicho término solo podrá ser

prorrogado por un término razonable a discreción del tribunal si el demandante demuestra justa causa para la concesión de la prórroga y solicita la misma dentro del término original. Transcurrido el término original o su prórroga sin que el emplazamiento hubiere sido diligenciado, se tendrá a la parte actora por desistida, con perjuicio.

■ Del texto de la regla y su jurisprudencia interpretativa se desprenden los requisitos siguientes: primero, que el término para emplazar es de seis meses; segundo, que dicho término puede ser prorrogado discrecionalmente por el tribunal de instancia, aun expirado ya el plazo; tercero, que la prórroga para emplazar se autorizará sólo por justa causa, y cuarto, que el incumplimiento con el término provisto acarrea la desestimación con perjuicio de la demanda. *First Bank of P.R. v. Inmob. Nac., Inc.*, supra, pág. 914; *In re Fernández Torres*, 122 D.P.R. 859 (1988); *Ortalaza v. F.S.E.*, 116 D.P.R. 700 (1985).

■ La desestimación con perjuicio que ordena la Regla 4.3(b), *supra*, al igual que la desestimación bajo la Regla 39.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, persigue sancionar la dejadez e inacción de un litigante que inicia un pleito y luego no efectúa las gestiones necesarias para adquirir jurisdicción sobre el demandado. *Banco Metropolitano v. Berríos*, 110 D.P.R. 721, 724 (1981) ("La Regla 4.3(b) es un desarrollo paralelo de la 39.2(b) sobre desestimación del pleito por inactividad, y ambas tienen el mismo propósito de acelerar la litigación y despejar los calendarios, operando la primera en la temprana etapa del pleito"). Esta sanción, sin embargo, es la más drástica que puede imponer el tribunal ante la dilación en el trámite de un caso, por lo que se debe recurrir a ella en casos extremos. El tribunal siempre debe procurar un balance entre el interés en promover la tramitación rápida de los casos y la firme política judicial de que los casos sean resueltos en sus méritos. Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Véanse: *Datiz v. Hospital Episcopal*, 163 D.P.R. 10 (2004); *Ghigliotti v. A.S.A.*, 149 D.P.R. 902

(1999); *Valentín v. Mun. de Añasco*, 145 D.P.R. 887 (1998); *Maldonado v. Srio. de Rec. Naturales*, 113 D.P.R. 494 (1982).

■ Cabe señalar también que la expiración del término de seis meses no tiene el efecto de caducidad de la citación ni de nulidad, y mucho menos afecta la jurisdicción del tribunal. *Rosado Vda. de Rivera v. Rivera et al.*, 155 D.P.R. 17 (2001); *Banco Metroplitano v. Berríos*, supra.

■ B. Por otro lado, aunque el diligenciamiento personal del emplazamiento es el método idóneo para adquirir jurisdicción sobre la persona, por vía de excepción, las Reglas de Procedimiento Civil autorizan emplazar mediante un edicto. Regla 4.5 de Procedimiento Civil, *supra*. Así, cuando la persona por ser emplazada, estando en Puerto Rico, no pueda ser localizada después de realizadas las diligencias pertinentes, procede que su emplazamiento se realice a través de la publicación de un edicto. *First Bank of P.R. v. Inmob. Nac., Inc.*, supra, págs. 916–917.

■ Para que proceda el emplazamiento mediante un edicto hemos requerido que el demandante acredite, mediante una declaración jurada, las diligencias realizadas para localizar y emplazar al demandando. La moción presentada debe contener hechos específicos y detallados demostrativos de esa diligencia y no meras generalidades. *Mundo v. Fúster*, 87 D.P.R. 363, 371–372 (1963). La razonabilidad de las gestiones efectuadas dependerá de las circunstancias particulares de cada caso, las cuales el juez corroborará a su satisfacción antes de autorizar el emplazamiento mediante un edicto. *Lanzó Llanos v. Banco de la Vivienda*, 133 D.P.R. 507, 515 (1993).

■ Autorizado el edicto por el tribunal, el demandante procurará su publicación en un *"un periódico de circulación diaria general de la Isla de Puerto Rico"* y luego —dentro de los diez días siguientes a la publicación— enviará a la parte demandada, por correo certificado a la úl-

tima dirección conocida, *una copia del emplazamiento y la demanda presentada.* Estos requisitos activan la garantía del debido proceso de ley en su vertiente procesal. De ahí que en *Reyes v. Oriental Fed. Savs. Bank*, 133 D.P.R. 15, 24 (1993), señaláramos que estos requisitos *deben observarse estrictamente.* De lo contrario, se priva al tribunal de jurisdicción sobre la persona del demandado, por lo que cualquier sentencia dictada será nula. *Ortiz v. The Crescent Trading Co.*, 69 D.P.R. 501, 504–505 (1949). Véanse, además: *Medina v. Medina*, 161 D.P.R. 806 (2004); *Rivera v. Jaume*, supra; *Acosta v. ABC, Inc.*, supra, pág. 931.

No habíamos tenido ocasión de expresarnos sobre la exigencia de la Regla 4.5, *supra,* en cuanto a que el edicto se publique en "un periódico de circulación diaria general de la Isla de Puerto Rico".[5] Los recurridos han planteado que el peticionario incumplió con dicha exigencia porque el edicto fue publicado en el periódico *El Vocero de Puerto Rico* y este periódico no se publica los domingos, por lo que no es de "circulación diaria general". Procede entonces que analicemos detenidamente el contenido y alcance de esta disposición reglamentaria.

Iniciamos señalando que el requisito de publicación de edictos en un periódico de circulación diaria general no tiene contraparte en las reglas federales de procedimiento civil. Ahora bien, los estatutos y las reglas procesales en las jurisdicciones estatales de Estados Unidos, que requieren la publicación de edictos en los periódicos bien para emplazar, bien para notificar de una venta judicial o bien para informar a la ciudadanía de un cambio de zonificación, entre otros asuntos, sí exigen que tal notificación se

---

[5] La Regla 4.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, proviene del Art. 95 del Código de Enjuiciamiento Civil de 1904, que a su vez proviene del Art. 413 del Código de Enjuiciamiento Civil de California.

El artículo disponía lo siguiente respecto la orden que tiene que dictar el tribunal para autorizar el emplazamiento mediante edicto:

"La orden dispondrá que la publicación se haga en un periódico, *designándose el que con más probabilidad sirva para notificar a la persona que deba ser citada,* por un período de tiempo razonable, a lo menos una vez por semana."

publique en *"un periódico de circulación general"*. Ninguna de las disposiciones analizadas exigía también que la publicación fuera en un periódico que circulara todos los días.

█ El requisito de que la notificación se efectúe en un periódico de "circulación general" persigue que la información publicada, es decir, la acción judicial pendiente, tenga la mayor diseminación posible en el público en general. Ello permite la inferencia razonable de que la parte afectada tuvo la oportunidad de quedar informada de la causa pendiente en su contra. Adviértase que se cumple con los rigores del debido proceso de ley cuando el método adoptado de notificación es razonablemente calculado, a la luz de los hechos del caso, para notificar a un demandado de la acción que pende en su contra, de modo que que éste, a su vez, pueda tomar una decisión informada sobre si desea o no comparecer a defenderse. *Márquez v. Barreto*, supra, pág. 143; *Lanzó Llanos v. Banco de la Vivienda*, supra; *Chase Manhatan Bank v. Polanco Martínez*, 131 D.P.R. 530 (1992); *Rodríguez v. Nasrallah*, 118 D.P.R. 93 (1986). Véase, además, *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314–315 (1950).

Lo que es un periódico de circulación general es una controversia que ha generado considerable jurisprudencia en la jurisdicción estatal en Estados Unidos. Un análisis de la normativa prevaleciente demuestra que la determinación de si un periódico es o no de "circulación general", es un asunto que involucra principalmente consideraciones de *naturaleza cualitativa o sustantiva referente al contenido del periódico*, y no de naturaleza cuantitativa, es decir, del tamaño o extensión de su circulación. Así, en *Great Southern Media v. Mc Dowell Cty.*, 284 S.E.2d 457, 462 (N.C. 1981), el Tribunal Supremo de Carolina del Norte indicó:

> Cases from our sister jurisdictions make clear that the term "general circulation" when applied to newspapers refers not so much to the numerical or geographic distribution of the news-

> paper as it does to the contents of the paper itself. The primary consideration is whether the newspaper contains information of general interest.

En igual sentido, en *Burak v. Ditson*, 229 N.W. 227, 228 (Iowa 1930) se señaló: "Whether a newspaper is one of general circulation is a matter of substance, and not of size." Véanse, además: *Foster v. Anable*, 19 P.3d 630, 633 (D. Ariz. 2001); *Moore v. State*, 553 P.2d 8 (D. Alaska 1976); *Shulansky v. Michaels*, 484 P.2d 14 (D. Ariz. 1971); *In re La Opinión*, 89 Cal. Rptr. 404 (1970); *Pirie v. Kamps*, 229 P.2d 927 (D. Wyo. 1951); *Board of Com'rs v. Greensburg Times*, 19 N.E.2d 459 (Ind. 1939); *Shelley v. Normile*, 94 P.2d 206 (D. Mont. 1939); *Eisenberg v. Wabash*, 189 N.E. 301 (Ill. 1934). Véase, además, 24 A.L.R. 4th 822 y casos allí citados.

Ello no quiere decir que el tamaño de la circulación del periódico sea un factor irrelevante, lo que implica es que éste es un criterio más por considerar en la evaluación y no es, ciertamente, el determinante para concluir si un periódico es o no de "circulación general". "The proper construction of the term 'general circulation' requires consideration of both the qualitative and the quantitative aspects of the publication." *Moore v. State*, supra, pág. 21.

■ Un periódico se puede considerar de circulación general *si está orientado hacia el público más diverso posible*. De ahí que lo medular sea el tipo de noticia que publica y no el número de ejemplares que se venden. En esta evaluación se analizará si en el periódico se publican noticias de interés general, tanto de carácter nacional como internacional; noticias diversas en áreas tales, como política, comercio, deportes, sociales o de interés humano; si tiene una página editorial o si tiene columnistas regulares que comentan sobre asuntos de interés general, y otros renglones similares. A mayor diversidad en las noticias que se publican, más variado será el público lector que se

atrae, lo que a su vez permite catalogar el periódico como de circulación general.

Aclarado este marco doctrinal, apliquémoslo a la controversia ante nosotros.

## III

A. Antes de comenzar propiamente con la discusión se hace necesario los señalamientos siguientes. El trámite procesal de este caso ha sido, como poco, azaroso. El expediente está plagado de dilaciones injustificadas del tribunal de instancia en atender las mociones presentadas por las partes y, luego, en notificar las determinaciones tomadas. A modo de ejemplo, *baste indicar que le tomó al tribunal veinte meses, es decir, cerca de dos años, resolver y notificar una sencilla moción de falta de jurisdicción presentada por la parte demandada, donde alegó que no fue emplazada dentro del término de la Regla 4.3(b)*, supra.

Por otro lado, los "errores" en que ha incurrido la representación legal de la parte demandante, en su accidentado intento de emplazar a la parte demandada, primero personalmente y luego mediante un edicto, denotan un asombroso desconocimiento de los requisitos de las citadas Reglas 4.3 y 4.5 de Procedimiento Civil y de nuestra jurisprudencia. El proceder del tribunal de instancia, así como el de la representación legal del Banco Popular, son responsables del lamentable retraso en la resolución final de este caso.

Ello a un lado, procede determinar si se justificaba la desestimación con perjuicio de la demanda instada por el Tribunal de Primera Instancia y confirmada por el Tribunal de Apelaciones, y si se cumplió con lo dispuesto en la Regla 4.5 de Procedimiento Civil, *supra.* Veamos.

Conforme se desprende de la relación de hechos, el Banco Popular presentó su moción de emplazamientos mediante edicto *dentro del término de seis meses para emplazar*, dispuesto en la Regla 4.3(b) de Procedimiento Civil,

*supra.* Ahora bien, la declaración jurada que acompañó la solicitud para emplazar mediante un edicto, donde se acreditaron las gestiones llevadas a cabo para localizar a la parte demandada, era claramente insuficiente para cumplir con las exigencias de la citada Regla 4.3(b). Véase *Lanzó Llanos v. Banco de la Vivienda,* supra. De ahí que el tribunal de instancia, correctamente, solicitara del Banco mayor especificidad respecto a las gestiones realizadas por éste para emplazar a los demandados. Esta orden fue emitida y notificada transcurrido ya el término de seis meses, lo que hacía imposible que la insuficiencia de las gestiones pudiese subsanarse dentro del término reglamentario. Por lo tanto, aun cuando la responsabilidad inicial de llevar a cabo correctamente las gestiones para diligenciar el emplazamiento dentro del término reglamentario recae exclusivamente sobre el demandante, en este caso la dilación del propio tribunal contribuyó, con toda probabilidad, a que ello no pudiera ser así.

Notificado de la determinación del tribunal, el Banco se dio a la tarea de cumplir con lo ordenado. En ese momento, sin embargo, y advertido que las gestiones llevadas a cabo para diligenciar los emplazamientos eran insuficientes, el Banco, como mínimo, debió haber solicitado del tribunal una prórroga para emplazar, advirtiéndole del curso procesal del caso hasta ese momento. No lo hizo. En vez, se dio a la tarea de subsanar de inmediato la omisión pasada.

Una vez el Banco le notificó de sus gestiones al tribunal, éste, *sub silentio*, debió haber concluido que había justa causa para prorrogar el término de emplazamiento, ya que autorizó que se emplazara a la parte demandada mediante un edicto. Véase *Banco Metropolitano v. Berríos*, 110 D.P.R. 721, 724 (1981). Al ponderar y evaluar detenidamente el trámite procesal de este caso, no podemos concluir que esta determinación del tribunal de instancia constituyera un abuso de discreción que requiriera su revocación. Ciertamente, la mejor práctica hubiera sido que el tribunal ex-

presamente indicara que estaba prorrogando el término para emplazar y las razones para ello. Ello permite que las partes queden informados del porqué de la desviación del término reglamentario y facilita la revisión en alzada de tal determinación, ya que de esta forma el foro apelativo tendrá ante sí un cuadro más completo para pasar juicio de si el tribunal *a quo* abusó de su discreción en su estimación de justa causa o negligencia excusable. Véase *Banco Metropolitano v. Berríos*, supra.

Lo cierto es que en este caso, la parte demandante no ha demostrado dejadez o abandono del procedimiento. Ha actuado con celeridad y prontitud una vez advertido de sus errores, para enderezar el torcido camino que ha labrado. Si bien es cierto que ésta ha contribuido con sus desaciertos al escarpado trámite procesal en este caso, la responsabilidad por ello no recae exclusivamente sobre sus hombros. La tardanza del tribunal en resolver y notificar las mociones presentadas, como señalamos, incluyendo la solicitud de emplazamiento mediante edicto, ha contribuido a complicar el curso procesal de este caso.

Adviértase, además, que la parte demandada no ha demostrado que la tardanza en el diligenciamiento de los emplazamientos le haya causado algún perjuicio. Por todo lo anterior y ante los hechos muy particulares de este caso, así como tomando en cuenta la clara política pública de que los casos se atiendan en sus méritos, revocamos la determinación tanto del Tribunal de Primera Instancia como del Tribunal de Apelaciones, de desestimar con perjuicio la demanda instada en este caso por incumplimiento con el término de la Regla 4.3(b), *supra*. Procedía, por lo tanto, prorrogar el término para emplazar y autorizar el emplazamiento mediante un edicto.

B. Ello, sin embargo, no dispone de este recurso, pues como vimos ya, el recurrido ha planteado también el incumplimiento del Banco Popular con la Regla 4.5 de Procedimiento Civil, *supra*, que regula el emplazamiento me-

diante un edicto. Como recordaremos, éste arguyó que el edicto no se publicó en un periódico de circulación diaria y que no se le envió copia del edicto publicado, lo que vicia de nulidad el emplazamiento. Veamos entonces.

Como indicamos anteriormente, la citada Regla 4.5 dispone que todo edicto deba publicarse en un periódico "de circulación diaria general en la Isla de Puerto Rico". No hay duda que, a la luz de la discusión anterior, *"El Vocero de Puerto Rico" es un periódico de circulación general.* En *El Vocero de Puerto Rico* se publican noticias de interés general para la ciudadanía. Se cubren noticias de carácter nacional e internacional, deportes, comercio e interés humano, entre otras. El periódico tiene una página editorial en la cual fija su posición sobre asuntos de importancia para el país. Tiene también varios columnistas regulares que publican semanalmente sus comentarios sobre los asuntos acuciantes del país. Además de lo anterior, éste es uno de los periódicos de mayor circulación en todo Puerto Rico.

El recurrido nos indica, sin embargo, que para cumplir efectivamente con la Regla 4.5, *supra,* el periódico tiene que ser de "publicación diaria", y toda vez que *El Vocero de Puerto Rico* no se publica los domingos, éste no cualifica. No tiene razón, veamos por qué.

 La lectura literal que propone el recurrido de la Regla 4.5, *supra,* obvia lo verdaderamente importante de la notificación a través de la publicación de un edicto en un periódico. *Lo verdaderamente esencial de la Regla 4.5 es que el edicto se publique en un medio que logre la mayor diseminación en el público en general.* Ello es lo que permite la inferencia razonable que la parte demandada quedó informada de la acción en su contra, para garantizarle así el debido proceso de ley. La ficción que supone el emplazamiento mediante edicto se asienta precisamente sobre ese presupuesto. Tal exigencia se cumple si el medio en que se publicó el edicto fue de "circulación general".

Véase *Quiñones Román v. Cía. ABC*, 152 D.P.R. 367, 380 (2000). Como sabemos, no es necesario para la validez de un edicto que los demandados efectivamente lo lean.

 Idealmente, ese periódico de circulación general podrá también ser de publicación diaria; lo principal, sin embargo, es que sea de circulación general. El hecho que el edicto se publique en un periódico de circulación general que circula seis días a la semana y no siete, no hace el edicto ineficaz. *A contrario sensu*, si el edicto se publica en un periódico que circula todos los días, mas no es "de circulación general", esa publicación es insuficiente para que el tribunal pueda adquirir jurisdicción sobre la persona del demandado, por lo que el edicto así publicado sería nulo. Este tipo de publicación no permite la inferencia razonable de que la parte demandada pudo quedar informada de la acción instada en su contra. *Reiteramos que lo importante para garantizarle a un demandado el proceso debido es que la notificación se haga en un periódico de circulación general.* Concluimos, por lo tanto, que la publicación en *El Vocero de Puerto Rico* del edicto en este caso cumplió a cabalidad con lo dispuesto en la Regla 4.5 de Procedimiento Civil, *supra*.

Finalmente, el recurrido nos indica que nunca fue notificado con copia del emplazamiento mediante edicto por el Banco Popular, ya que sólo se le envió copia de los emplazamientos originalmente expedidos y la demanda. El Banco no niega que ello es así.

 La citada Regla 4.5 exige que el edicto que se publique contenga la siguiente información, a saber: sala del tribunal de instancia donde se ventila el caso, número del caso, nombre del demandante, nombre del demandado por emplazar, naturaleza del pleito, nombre, dirección y teléfono del abogado del demandante, *nombre de la persona que expidió el edicto, fecha de expedición, término dentro del cual deberá contestar la demanda y una advertencia de que si no contesta la demanda "se le anotará la rebeldía*

*y se le dictará sentencia concediendo el remedio solicitado sin má s citarle y oírle".* (Énfasis suplido.) Esta información advierte al demandado de la naturaleza de la reclamación en su contra y de cómo y cuándo deberá responder a ésta; de ahí la importancia de que se le envíe copia del edicto a la parte demandada. Adviértase que un demandado emplazado mediante un edicto cuenta con un término distinto para contestar la demanda que aquel que ha sido emplazado personalmente. Véase Regla 10 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Ni en la demanda presentada en este caso ni en los emplazamientos originalmente expedidos —documentos que sí le fueron enviados a la parte demandada— se les informa del término dentro del cual deben contestar, cuándo éste comienza a transcurrir, ni se les advierte de que si no contestan la demanda se les anotará la rebeldía y se dictará la correspondiente sentencia, concediendo el remedio solicitado sin más citarle y oírle. Estos documentos, por lo tanto, son insuficientes para que el demandado pueda tomar una decisión informada de si comparece o no al tribunal. Ello vicia de nulidad el emplazamiento mediante edicto efectuado en este caso por el Banco Popular, ya que se viola el proceso debido a la parte demandada.

 En el pasado hemos indicado que cuando un emplazamiento es diligenciado de manera incorrecta, el remedio apropiado no es desestimar la demanda, sino más bien ordenar que se repita el diligenciamiento. *Negrón v. Depto. Servicios Sociales*, 105 D.P.R. 873, 876 (1977). Ello es cónsono con la clara política pública que pretende que los casos se ventilen en sus méritos y que no se le prive a una parte de su día en corte. *Ghigliotti v. A.S.A.*, supra, pág. 915; *Mercado v. Panthers Military Soc., Inc.*, 125 D.P.R. 98 (1990).

En vista de lo anterior, concluimos que el edicto publicado en el caso de autos es nulo por no haberse notificado a la parte demandada con copia del referido documento como

ordena la Regla 4.5, *supra*. Se devuelve el caso al Tribunal de Primera Instancia para que le conceda al Banco Popular un plazo razonable para que proceda a realizar el emplazamiento correspondiente. El Tribunal de Primera Instancia queda en libertad para imponer a esta parte una sanción económica si lo estima razonable.

## IV

Por los fundamentos expuestos, *se revoca la sentencia emitida por el Tribunal de Apelaciones que confirmó la desestimación con perjuicio de la demanda instada decretada por el Tribunal de Primera Instancia. Se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos acorde con lo aquí expresado.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri no intervino.