Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| MUNICIPIO AUTÓNOMO DE SAN JUAN<br><br>Recurrente<br><br>v.<br><br>DANIEL GÓMEZ MARRERO<br><br>Recurrida | TA2025RA00392 | *Revisión*<br>procedente de la Oficina de Gerencia de Permisos, División de Revisiones Administrativas<br><br>Caso Núm.:<br>2025-643987-SDR-302930<br><br>Sobre:<br>Resolución de Revisión Administrativa |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de diciembre de 2025.

Comparece el Municipio Autónomo de San Juan (OPMASJ o parte recurrente) mediante un recurso de revisión administrativa para solicitarnos la revisión de la *Resolución* emitida y notificada el 21 de noviembre de 2025, por la Oficina de Gerencia de Permisos (OGPe).[1] Mediante la *Resolución* recurrida, la OGPe archivó una solicitud de revisión administrativa incoada por la parte recurrente.

Por los fundamentos que expondremos, se *revoca* la *Resolución* recurrida.

I

De lo que se desprende de los autos ante nuestra consideración, el 25 de enero de 2025, HN Realty & Investment Group LLC interpuso ante la OGPe una Consulta de Construcción para habilitar una estructura para apartamentos. Luego, el 3 de julio de 2025, LOL, Property LLC, presentó ante el Profesional

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA), a la Entrada Núm. 1, Apéndice 2.

Autorizado núm. 01200-PRO-01180, Daniel Gómez Marrero (en adelante, Profesional Autorizado o recurrido), una solicitud de permiso único para cafetería con venta de bebidas alcoholicas al detalle y una (1) vellonera.

Luego de varios incidentes procesales, el 3 de julio de 2025, el recurrido emitió el Permiso Único bajo la solicitud con número de caso 2025-640056-PU-421547.

En desacuerdo, el 24 de julio de 2025, la OPMASJ interpuso una *Solicitud de revisión administrativa y de revocación de permiso emitido por profesional autorizado.*[2] Como parte de su pliego, peticionó que se señalara una vista administrativa para atender el asunto en los méritos; solicitó que se revocara y/o declarara que el trámite relacionado al permiso era nulo *ab initio*; que se refiriera el asunto a la División de Regulación Profesional de la OGPe, a la División de Auditoría de la Junta de Planificación y al Colegio de Ingenieros y Agrimensores de Puerto Rico, para las acciones éticas, legales y disciplinarias que procedieran; así como que impusiera multa, sanciones y otros remedios. En lo atinente, notificó su pliego a las partes y, en lo específico, al señor Daniel Gómez Marrero al correo electrónico padaniel1953@gmail.com.

Recibida la misma, el 8 de agosto de 2025, notificada el día 11, del mismo mes y año, la OGPe emitió *Notificación* acogiendo solicitud de revisión administrativa. La misma, en lo pertinente, dicha decisión fue notificada al señor Daniel Gómez Marrero al correo electrónico padaniel11953@gmail.com. Días más tarde, el 13 de agosto de 2025, la OGPe emitió Notificación *Nunc Pro Tunc* para corregir el epígrafe de la Notificación, se eliminó cierta dirección postal y se incluyó el correo electrónico que se señaló en el Notifíquese y se procedió a re notificar la determinacion en la cual

---

[2] SUMAC TA, a la Entrada Núm. 1, Apéndice 1.

se acogió la solicitud de revisión administrativa. En lo atinente, dicha determinación fue notificada al señor Daniel Gómez Marrero al correo electrónico padaniel1953@gmail.com.[3]

De ahí, el 27 de agosto de 2025, se emitió un Señalamiento de vista de revisión administrativa. La misma fue notificada el 28 de agosto de 2025, y quedó calendarizada para el 25 de septiembre de 2025, de forma virtual. Con relación al señor Daniel Gómez Marrero, la notificación fue emitida al correo electrónico Padaniel11953@gmail.com.[4]

La vista fue celebrada el 25 de septiembre de 2025, de forma virtual ante la Oficial Examinadora, Dailyn Rivera Milanés (Oficial Examinadora). Producto de la vista celebrada, la Oficial Examinadora rindió un *Informe de Vista Administrativa* (Informe).[5] Dicho *Informe* fue rendido el 24 de octubre de 2025, luego de haberse emitido y notificado una *Orden de Prórroga* el 22 de octubre de 2025.[6] Conviene puntualizar que del *Informe* se desprende, específicamente en la determinación de hecho número diez (10), que el señor Daniel Gómez Marrero, Profesional Autorizado, no compareció a pesar de haber sido citado debidamente. Por otro lado, la Oficial Examinadora recomendó que se declarara *Ha lugar* la revisión administrativa y se dejara sin efecto el permiso único otorgado en este caso.

De ahí, el 21 de noviembre de 2025, la OGPe emitió y notificó la *Resolución* recurrida.[7] Mediante esta *Resolución,* la OGPe dispuso que no procedía acoger el *Informe* ni su recomendación, puesto a que se incumplió con el deber de notificar adecuadamente varios documentos, incluyendo el señalamiento de vista administrativa. A

---

[3] SUMAC TA, a la Entrada Núm. 1, Apéndice 4.
[4] *Íd.,* Apéndice 5.
[5] *Íd.,* Apéndice 7.
[6] *Íd.,* Apéndice 6.
[7] *Íd.,* Apéndice 2.

tenor, archivó la solicitud de revisión administrativa interpuesta por la OPMASJ.

Se desprende de la *Resolución* recurrida que la OGPe emitió veintiuna (21) determinaciones de hechos y son las siguientes:

1. El 25 de enero de 2025, HN Realty & Investment Group LLC. presentó ante la Oficina de Gerencia de Permisos (OGPe), una Consulta de Construcción para habilitar estructura para apartamentos en predio de terreno con cabida de 445.1215 metros cuadrados.

2. El 3 de julio de 2025, LOL Property LLC. presentó ante el Profesional Autorizado núm. 01200-PRO-01180 Daniel G[ó]mez Marrero, una solicitud de permiso único para cafetería con venta de bebidas alcohólicas al detal y una (1) vellonera.

3. La propiedad con número de catastro 041-092-460-11, ubica en un distrito de calificación R1 "Residencial de Baja Densidad" según la Tabla de Equivalencias para los Distritos de Calificación para el Municipio de San Juan.

4. Surge que, como parte de la solicitud de permiso único, a la cual se le asignó el número 2025-640056 PU-421547, se incluyó un Memorial Explicativo en el cual se indicó lo siguiente:

   Memorial Explicativo A quien pueda interesarle Se est[á] solicitando el permiso único para una cafetería con venta de bebidas alcohólicas al detal y una (1) vellonera. El local está ubicado en el 518 Calle 12, De Santurce, el número de catastro es 041-092-460-11. Este permiso se estará solicitando para el primer nivel de la estructura principal. El horario será los siete días de la semana de 5:00 am a 12:59 pm, viernes y sábado se extiende hasta las 2:00 de la mañana según orden p[ú]blica. El estacionamiento es frente al local según el comportamiento del sector. Contaremos con alrededor de 5 empleados. Certificamos que el uso est[á] conforme al permiso único aprobado anteriormente y se mantienen las mismas características. Su Distrito de Calificación: es ZU-R1[,] pero su uso es comercial. El [ú]ltimo Permiso 2020-300671-PU-358833 aunque tiene vigencia hasta el 9 de septiembre de 2027[,] el mismo NO se va a utilizar para hacer el cambio de dueño. Aunque el Permiso aparece como vigente en el sistema de la OGPe[,] tomamos la decisión del acuerdo que se sacara un permiso nuevo. Incluimos en el caso una sentencia del Tribunal del CIVIL NÚM.: SJ2025CV01730.

5. Surge del expediente administrativo, que además del Memorial Explicativo presentado aclarando asuntos de la solicitud de Permiso Único, se incluyeron varios documentos.

6. El 3 de julio de 2025, [el] Profesional Autorizado Daniel G[ó]mez Marrero emitió el Permiso Único bajo la solicitud con número de caso 2025-640056-PU-421547.

7. En oposición con esta determinación, la Oficina de Permisos del Municipio de San Juan, [(]en adelante "Municipio")[,] presentó el 24 de julio de 2025 un recurso de Revisión ante la División de Revisiones Administrativas de la Oficina de Gerencia de Permisos del Departamento de Desarrollo y Comercio.

8. El recurso de revisión fue acogido el 8 de agosto de 2025[,] mediante Notificación Acogiendo Solicitud de Revisión Administrativa. Dicha Notificación fue notificada por la División de Secretaría de la OGPe el 11 de agosto de 2025.

   Verificando el documento[,] vemos que en [el] epígrafe se colocó[,] [p]or equivocación, la dirección del Municipio bajo la sección de la Parte Recurrida (PA Daniel Gómez). Es menester también mencionar que en el NOTIF[Í]QUESE la información [de] la parte Recurrida es la correcta.

9. A esos fines, el 13 de agosto de 2025, esta División emitió una Notificación NUNC PRO TUNC. En la misma se aclaró que se enmienda Nunc Pro Tunc la Notificación emitida, a los fines de corregir el epígrafe de la Notificación eliminando la dirección postal e incluyendo el correo electrónico que se señaló en el Notifíquese y procede a renotificarse.

10. El 28 de agosto de 2025, se emitió una Orden a los fines de pautar la Vista de Revisión Administrativa para el día 25 de septiembre de 2025 de forma virtual en el sistema Microsoft Teams (Microsoft 365).

11. La vista fue presidida por Dailyn Rivera Milanés como Oficial Examinadora. Compareció por la parte Recurrente el Lcdo. Pablo Rovira Bonnin acompañado por la PE, Sra. Gladys Maldonado, Directora de la Oficina de Permisos del Municipio de San Juan,] y Alejandro Cuadrado, gerente de permiso. Por la OGPe, compareció el Lcdo. Israel Pag[á]n. El Recurrido, el Profesional Autorizado núm. 01200-PRO-01180[,] Daniel G[ó]mez Marrero, no compareció.

12. Luego de que las partes se identificaran, se hizo constar que la parte recurrida no compareció.

13. El Recurrente explicó que el recurso de revisión administrativa fue presentado debido a que se expidió un permiso en contravención de las facultades que tienen los profesionales autorizados para expedir los permisos de carácter ministerial.

   Pidió que se tomara conocimiento de la sentencia emitida por el [T]ribunal de Primera Instancia el 30 de junio de 2025[,] en el caso SJ2025CV01730, en la que se ordenó la revocación del permiso y que cerraran las operaciones del comercio objeto del caso, disponiendo[,] además[,] que se mantuviera así hasta que se obtuviera el permiso correspondiente o el Tribunal hiciera otra expresión sobre el particular. Explica adem[ás] el recurrente[,] que es importante tomar este conocimiento dado a que, al revocar el permiso, se devuelve la zonificación a ZU-R1

correspondiente al Reglamento de Zonificación Especial de Santurce, el cual no contempla el uso de cafetín, que es el uso que se contempla en el Permiso Único expedido por el Profesional Autorizado (PA), aquí Recurrido.

Expone[,] además[,] que el PA indica en el Permiso Único que la operación del negocio es de 5:00a.m. a 2:00a.m. cuando los permisos de cafetín solo pueden operar hasta las 11:00p.m.[,] que opera en un piso cuando de una inspección ocular se observó que opera en tres niveles, siendo el tercer nivel una terraza.

14. El Gerente de Permisos de la Recurrente habló sobre el Reglamento de Zonificación Especial de Santurce. Indicó que este tiene supremacía sobre el Reglamento Conjunto 2023 en lo relacionado con parámetros y usos permitidos. Bajo este reglamento especial, la calificación ZU R1 corresponde a una zona de uso residencial en la cual el uso de cafetín con bebidas alcohólicas y vellonera no es permitido. Hizo constar además que el comercio no tiene estacionamiento.

15. La Directora de la Oficina de Permisos del Municipio de San Juan, quien también funge como supervisora del área de inspección de la Oficina de Permisos, explicó que cuando se hizo la conversión del Permiso de Uso al Permiso Único en el 2020, había un área comercial en el primer nivel y en el segundo nivel era un área residencial.

Que al momento[,] en el tercer nivel tienen una terraza que no estaba contemplada en el 2020 cuando se hizo la conversión antes indicada. Esta terraza no cuenta con permiso de construcción.

Que estas observaciones se desprenden de las fotos sometidas para la conversión del 2020 y por las intervenciones que han llevado a cabo los inspectores de la Oficina de Permisos del Municipio de San Juan.

Que la preocupación surge de que el PA viene obligado a ver las condiciones del negocio antes de otorgar el permiso. No obstante, en el memorial dice que el negocio opera en un piso cuando realmente al visitar el negocio se puede ver que opera en tres niveles. Que dicha información es patentemente falsa y fácil de verificar.

16. El Lcdo. Rovira peticiona que se impongan aquellas multas, sanciones y remedios, entre otros[,] que en derecho procedan.

17. El representante legal de la OGPe, Lcdo. Pagán, indicó que tal como explicó la Recurrente, entienden también que procede la revocación del permiso expedido por el PA. Añade que, en la sentencia mencionada por la recurrente, el permiso anterior fue revocado precisamente porque la parte se allanó. Que posteriormente, el PA expide un nuevo permiso cuatro (4) días después de esa sentencia e incluye como permiso válido el anterior revocado por el tribunal. Indica además que, en ese sentido, tratándose de una zona residencial y de un uso que no está permitido ministerialmente, pues escapa al ámbito de lo que pueden expedir los profesionales autorizados.

18. Sometidos los planteamientos de las partes, el caso quedó para su resolución.

19. Del expediente digital surge Sentencia del Tribunal de Primera Instancia, Sala Superior de San Juan[,] para el caso Civil Núm. SJ2025CV01720, emitida el 30 de junio de 2025, en la que:

    "se Ordena que la revocación del permiso Numero de Trámite: 2020-300671-PU-358833, expedido el 6 de septiembre de 2024 bajo el nombre de Bakno y cuya fecha de expiración es el 9 de septiembre de 2027. Además, se ordena el cierre de operaciones de dicho negocio, hasta que otra cosa disponga el Tribunal o que se obtenga los correspondientes permisos".

20. Verificando los documentos relacionados a la presente Revisión Administrativa, encontramos que el señalamiento de vista no fue notificado al correo electrónico de la Parte Recurrida, razón por la cual no fue debidamente notificado.

21. El 24 de octubre de 2025, la Oficial Examinadora remitió su informe con Determinaciones de Hecho, Conclusiones de Derecho y su recomendación.[8]

Como parte del dictamen, la OGPe concluyó que procedía desestimar bajo el fundamento de que no se cumplió con el debido proceso de ley.

Inconforme, el 10 de diciembre de 2025, compareció la OPMASJ mediante un recurso de revisión en el cual alzó el siguiente señalamiento de error:

ERRÓ EL JUEZ ADMINISTRATIVO DE LA DIVISIÓN DE REVISIONES ADMINISTRATIVAS DE LA OGPE AL ARCHIVAR LA SOLICITUD DE REVISIÓN ADMINISTRATIVA PRESENTADA POR LA OPMASJ, A PESAR DE QUE EL ERROR DE NOTIFICACIÓN QUE DIO LUGAR A DICHO ARCHIVO FUE COMETIDO POR LA SECRETARÍA AUXILIAR DE LA PROPIA OGPE.

Mediante *Resolución* emitida el 11 de diciembre de 2025, concedimos a la parte recurrida hasta el 16 de diciembre de 2025, para expresarse en torno al recurso.

Así las cosas, el 17 de diciembre de 2025, compareció la OGPe mediante *Moción informativa y solicitud de devolución del caso*. Solicitó que se devolviera el caso a la agencia para el trámite administrativo correspondiente.

---

[8] SUMAC TA, a la Entrada Núm. 1, Apéndice 2.

El recurrido no compareció. Habiendo quedado el caso perfeccionado, procederemos a resolver.

II

## A. La Revisión Judicial

El Tribunal Supremo de Puerto Rico ha sostenido que el derecho a cuestionar la determinación de una agencia, mediante revisión judicial, es parte del debido proceso de ley protegido por la Constitución de Puerto Rico.[9] El Artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico[10] otorga competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[11] La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme a la ley y de forma razonable.[12] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados, y si son compatibles con la política pública que las origina.[13] A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y (iii) la revisión completa y absoluta de las conclusiones de derecho.[14] Nuestro Alto Foro ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además, otorga a las personas, cuyos derechos pudieran quedar afectados,

---

[9] *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014); *Picorelli López v. Depto. de Hacienda,* 179 DPR 720, 736 (2010).
[10] Ley Núm. 201-2003, 4 LPRA sec. 24y(c).
[11] *Asoc. Condómines v. Meadows Dev.*, supra, a la pág. 847.
[12] *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007).
[13] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).
[14] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II,* 179 DPR 923, 940 (2010); *Mun. de. San Juan v. JCA,* 149 DPR 263, 279-280 (1999).

la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[15]

Dentro de este marco, los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[16] Igualmente, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no deben alterar las determinaciones de las agencias.[17] En mérito de lo anterior, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[18]

Ahora bien, la deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones: (i) cuando la decisión no esté basada en evidencia sustancial; (ii) cuando la agencia haya errado en la aplicación de la ley; (iii) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y, (iv) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[19] Entiéndase que, aunque los tribunales están llamados a conceder deferencia a las decisiones administrativas, tal norma no es absoluta. Ello, puesto a que no puede imprimírsele un sello de corrección automático, bajo el pretexto de deferencia, a determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a derecho.[20]

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar

---

[15] *Asoc. Vec. Altamesa Este v. Municipio de San Juan*, 140 DPR 24, 34 (1996).
[16] *Rolón Martínez v. Supte. Policía*, supra, a la pág. 35.
[17] *Íd.*
[18] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).
[19] *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. A.R.Pe.*, supra, a la pág. 294.
[20] *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743, 754 (2024).

prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones.[21] Para ello, deberá demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[22] Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las no sustituirá el criterio de la agencia por el suyo.[23]

### B. La Notificación Adecuada

La Sección 7 del Artículo II de la Constitución de Puerto Rico,[24] al igual que las Enmiendas V y XIV de la Constitución de los Estados Unidos,[25] garantizan que ninguna persona será privada de su libertad o propiedad sin el debido proceso de ley. Esta garantía procesal funciona de dos vertientes, la sustantiva y la procesal. En lo referente a esta última, se ha entendido que "el debido proceso de ley procesal le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo".[26] Para garantizar las exigencias mínimas del debido proceso de ley todo procedimiento adversativo debe satisfacer lo siguiente: 1) *notificación adecuada del proceso*; 2) proceso ante un juez imparcial; 3) oportunidad de ser oído; 4) derecho a contrainterrogar testigos y examinar la evidencia presentada en su

---

[21] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 128 (2019); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).
[22] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[23] *Otero v. Toyota*, 163 DPR 716, 728 (2005).
[24] CONST. PR, Art. II, Sec. 7.
[25] CONST. EE. UU., Emda. V y XIV.
[26] *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* 133 DPR 881, 887 (1993); *López Vives v. Policía de P.R.*, 118 DPR 219 (1987).

contra; 5) asistencia de abogado; y 6) que la decisión se base en la evidencia presentada y admitida en el juicio.[27] A esos efectos, la característica medular de la garantía del debido proceso de ley es que el procedimiento seguido sea uno justo.[28]

La notificación adecuada es aquella que se dirige específicamente a la parte o a su representación legal.[29] Sobre este particular, nuestra jurisprudencia ha establecido que la incorrecta notificación atenta contra los derechos de las partes, al privarles de cuestionar el dictamen emitido y causarles demoras e impedimentos en el proceso.[30] Por ello, al no notificarse adecuadamente alguna resolución, orden o sentencia, estas no surten efecto y los términos no comienzan a transcurrir.[31]

### C. La Desestimación como Severa Sanción

En nuestro ordenamiento jurídico se ha desarrollado una política pública a favor de que los casos se ventilen en los méritos.[32] A esos efectos, tanto los tribunales como las agencias administrativas deben optar por desestimar un pleito excepcionalmente y en casos extremos.[33] Ello, puesto a que la aludida sanción es la más drástica, toda vez que tiene el efecto de una adjudicación en los méritos, y, por ende, cosa juzgada.[34] De manera que, la misma, usualmente, se reserva para sancionar la dejadez e inactividad de una parte.[35]

En mérito de lo antes expuesto, a la hora de imponer sanciones, por el incumplimiento de órdenes o por la inactividad de

---

[27] *Hernández v. Secretario*, 164 DPR 390, 395-396 (2005); *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra, a la pág. 889. (Énfasis suplido)
[28] *Rivera Santiago v. Srio. de Hacienda*,119 DPR 265, 274 (1987).
[29] *R & G Mortgage v. Arroyo Torres y otros*, 180 DPR 511, 525 (2010).
[30] *Berríos Fernández v. Vázquez Botet*, 196 DPR 245, 250-251 (2016).
[31] *Bco. Popular v. Andino Solís,* 192 DPR 172, 183 (2015).
[32] *VS PR, LLC v. Drift-Wind,* 207 DPR 253, 264 (2021); *Mejías v. Carrasquillo*, 185 DPR 288, 298 (2012).
[33] *VS PR, LLC v. Drift-Wind,* supra, a la pág. 264; *Banco Popular v. SLG Negrón*, 164 DPR 855, 864 (2005).
[34] *VS PR, LLC v. Drift-Wind,* supra, a las págs. 272-273; *Banco Popular v. SLG Negrón,* supra, a la pág. 864.
[35] *VS PR, LLC v. Drift-Wind,* supra, a las págs. 272-273.

una parte, la desestimación del pleito debe ser el último recurso a emplearse.[36] En vista de ello, es menester que se debe ser progresivo en el uso de sanciones disciplinarias. Es decir, las sanciones deben ir de menor a mayor grado de severidad, para no afectar de plano la reclamación de una parte.[37]

Sobre este particular, la Sección 3.21 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG) establece que las agencias podrán imponer sanciones en su función cuasijuidicial.[38] Entre las sanciones que faculta la referida ley a imponer se encuentra la desestimación de la acción en el caso del promovente o eliminar las alegaciones en el caso del promovido.[39] Ahora bien, solo se podrá ordenar lo anterior "si después de haber impuesto sanciones económicas y de haberlas notificado a la parte correspondiente, dicha parte continúa en su incumplimiento de las órdenes de la agencia".[40]

Siendo, así las cosas, es de ver que, respecto a la agencia administras, tal cual ha enfatizado nuestra jurisprudencia, "procederá la severa sanción de la desestimación del pleito, tan solo después que la parte haya sido debidamente informada y/o apercibida de la situación y de las consecuencias que puede tener el que la misma no sea corregida".[41]

III

En el recurso ante nuestra consideración, la OPMASJ nos plantea que la OGPe incidió con su proceder al archivar la solicitud de revisión administrativa presentada, a pesar de que el error cometido en torno a la notificación del señalamiento de vista fue cometido por la propia agencia. A tenor, nos solicita que revoquemos

---

[36] *Díaz Rivera v. AEELA*, 210 DPR 974, 978 (2022); *Amaro González v. First Federal Savings Bank*, 132 DPR 1042, 1051-1052 (1993).
[37] *Díaz Rivera v. AEELA,* supra, a la pág. 978.
[38] Ley Núm. 38-2017, 3 LPRA sec. 9661.
[39] *Íd.*, Sección 3.21 (b).
[40] *Íd.*
[41] *Maldonado v. Srio. de Rec. Naturales*, 113 DPR 494, 498 (1982).

lo actuado y, en consecuencia, dispongamos que la orden señalando la vista administrativa se notifique nuevamente, de forma correcta y en virtud de lo anterior, ordenemos la continuación de los procedimientos.

Según expusimos en nuestra exposición doctrinal previa, uno de los principales fines de la revisión administrativa es delimitar la discreción de los organismos administrativos para asegurar que ejerzan sus funciones de forma razonable.[42] En consecuencia, entre los aspectos que le corresponde examinar a esta Curia es si la agencia concedió un remedio apropiado.[43] Por tal razón, se nos permite intervenir cuando la actuación de la agencia resulte arbitraria, irrazonable o ilegal.[44] Tras revisar detenidamente los autos ante nuestra consideración, entendemos que el proceder de la agencia concernida, al desestimar la accion del título, no fue un remedio apropiado para este caso. Incluso, juzgamos que tal proceder va en contra de los principios establecidos en nuestro ordenamiento vigente. Así, pues, coincidimos con el planteamiento de la parte recurrente y entendemos que en este caso amerita que revoquemos lo actuado. Veamos.

Según se desprende de los autos, se emitió, a favor del recurrido, un Permiso Único en el caso 2025-640056-PU-421547. Entonces, en desacuerdo con el permiso concedido, la OPMASJ interpuso oportunamente una solicitud de revisión administrativa ante la OGPe. Según expusimos, la dirección de correo electrónico en la cual se le notificó al recurrido de la antedicha solicitud fue a: **padaniel1953@gmail.com**. De ahí, la OGPe acogió la solicitud y notificó la misma al recurrido a una dirección de correo electrónico distinto, entiéndase, **Padaniel11953@gmail.com**. Luego, mediante

---

[42] *Empresas Ferrer v. A.R.Pe.*, supra, a la pág. 264.
[43] *Batista, Nobbe v. Jta. Directores*, supra, a la pág. 217.
[44] *The Sembler Co. v. Mun. de Carolina,* supra, a la pág. 822 (2012).

una notificación *nunc pro tunc*, le notificó la determinación de acoger la revisión administrativa al correo electrónico padaniel1953@gmail.com. De lo que sigue, la OGPe señaló la vista administrativa para el 25 de septiembre de 2025. Empero, al momento de notificar la misma, lo hizo al correo electrónico que ya tenía como incorrecto, entiéndase padaniel11953@gmail.com.

Celebrada la vista administrativa, la Oficial Examinadora rindió un Informe. Allí, como parte de sus determinaciones de hecho, específicamente en el número diez (10), indicó que el recurrido no compareció a la vista a pesar de haber sido citado debidamente. Por otro lado, dispuso recomendar conceder el remedio solicitado por la OPMASJ. En otras palabras, la Oficial Examinadora recomendó que se declarara ha lugar la revisión administrativa y, en consecuencia, se dejara sin efecto el permiso otorgado.

Recibido el Informe, la OGPe emitió la *Resolución* recurrida que, según lo visto, dispuso archivar el recurso de revisión administrativa interpuesto por la OPMASJ. Lo anterior, luego de disponer no acoger el Informe ni su recomendación, tras haberse incumplido con el deber de notificar adecuadamente varios documentos, incluyendo el señalamiento de la vista administrativa.

Como bien establecimos en nuestra previa exposición doctrinal la incorrecta notificación infringe los derechos de los partes, principalmente puesto a que les ocasiona impedimentos en los procesos y les impide a cuestionar apropiadamente los dictámenes emitidos.[45] De modo que, atenta directamente contra la protección constitucional al debido proceso de ley.[46] Por lo anterior, se ha entendido que, al no notificarse adecuadamente alguna

---

[45] *Berríos Fernández v. Vázquez Botet*, supra, a la págs. 250-251.
[46] *Hernández v. Secretario*, supra, a la pág. 395-396; *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra, a la pág. 889.

resolución u orden, no comienzan ni tan siquiera a transcurrir los términos prescriptivos. [47]

Examinado la totalidad de los autos ante nuestra consideración es claro que, como correctamente estableció la OGPe en su Resolución, específicamente, en la determinación de hecho número veinte (20), el recurrido no fue debidamente notificado de la vista administrativa. Según se desprende claramente, del expediente surge una dirección de correo electrónico distinta a la que se le debió enviar la notificación con el señalamiento de vista. Sin embargo, habiéndose llegado a esta determinación de hecho, no es posible que convidemos con la OGPe de que el curso de acción era el archivo de la revisión administrativa. Nos explicamos.

Según expusimos previamente, la desestimación de una causa de acción debe ser el último recurso a emplearse,[48] siendo esta la acción más drástica, puesto a que propicia una adjudicación en los méritos, así como que tiene el efecto de cosa juzgada. Particularmente, conforme indicamos en nuestra previa exposición doctrinal, la desestimación de una acción puede utilizarse como medida disciplinaria. Respecto a lo anterior, la Sección 3.21 de la LPAUG faculta a las agencias administrativas a, en su función cuasijudicial, a decretar la desestimación de la acción, como medida disciplinaria en el caso del promovente, o a eliminar las alegaciones en el caso del promovido.[49] Ahora bien, según se desprende de los autos ante nuestra consideración, la incorrecta notificación del señalamiento de la vista administrativa no fue ocasionada por ninguna de las partes, si no por la propia agencia concernida. De modo que, aquí no procedía, de ninguna manera, recurrir a la severa sanción de la desestimación, si no, más bien, que, habiéndose

---

[47] *Bco. Popular v. Andino Solís,* supra, a la pág. 183.
[48] *Díaz Rivera v. AEELA*, supra, a la pág. 978 (2022).
[49] Sección 3.21 (b) de la Ley Núm. 38, *supra.*

correctamente percatado del error en la notificación, corregirlo y volver a señalar la vista administrativa, para garantizar el debido proceso de ley a todas las partes.

En consideración a todo lo anterior, forzosamente el único curso de acción es revocar lo actuado. Así, pues, se *revoca* la *Resolución* recurrida y se ordena a la OGPe a que, sin dilación, notifique adecuadamente un nuevo señalamiento de vista administrativa y continúe los procedimientos en este caso.

IV

Por los fundamentos que anteceden, se *revoca* la *Resolución* recurrida. En consecuencia, se devuelve el caso a la OGPe para que sin dilación notifique adecuadamente un nuevo señalamiento de vista administrativa y continúe los procedimientos en este caso.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones